GEORGE CUMMINGS & others *vs.* SMITH ARNOLD & another.

The terms of a written contract for the sale of goods may be varied by a subsequent parol contract, though the original contract falls within the operation of the statute of frauds.

In a suit for breach of a written agreement to manufacture, and deliver weekly to the plaintiff, a certain quantity of cloth, at a certain price per yard, on eight months' credit, it was held that the defendant might give in evidence, as a good defence, a subsequent parol agreement between him and the plaintiff, made on a legal consideration, by which the terms of payment were varied, and that the plaintiff had refused to perform the parol agreement.

ASSUMPSIT on the following agreement : "October 26th 1838. This is to show that I agree to furnish and deliver to Cummings, Hildreth & Co. of Boston, all the printing cloths which I make in my looms, which are on 35 inch cloths, and which make 150 pieces of cloth per week ; the quality to be the same as those sold by H. Power to Cummings, Hildreth & Co. on my account ; the warp being 64 picks to the inch, the filling 60 picks or threads to the inch. These goods, to the amount of one hundred and fifty pieces per week, I agree to deliver to Cummings, Hildreth & Co. in Boston, up to March 1st 1839, at eight and one quarter cents, say $8\frac{1}{4}$ yd. on eight months' credit. Smith Arnold & Co." The declaration averred that the plaintiffs had always been ready and desirous to receive and pay for said goods, according to the terms of said agreement, yet that the defendants had not delivered and furnished the same.

The defendants filed the following specifications of defence : 1. " That it was agreed [by parol] between the plaintiffs and defendants, at the time when the above contract was entered into, and after its execution and delivery, that the plaintiffs should give, in payment for the goods, satisfactory promissory notes, such as would be discounted at the bank where the defendants did business ∙ which notes were not given, as agreed, but were refused."  2.  " That after the making of the above agreement, a proposition was made by the plaintiffs to pay cash for the goods, at five per cent. discount :  That Arnold, one of the defendants, to whom this proposition was made, then being in Boston, told the plaintiffs he thought the defendants should accept the offer, but wished to consult with his partner ; for which purpose time was allowed him ; that he went home and consulted his partner, and wrote immediately to the plaintiffs that they (the defendants) should accept the proposition ; but that the plaintiffs afterwards refused to adhere to the bargain, as it was not closed at the time the proposition was made."

At the trial before *Putnam* J. the defendants offered to prove the oral agreements mentioned in their specification, and that they were made on a legal and valid consideration.  But the judge refused to admit the proof, and a verdict was returned for the plaintiffs.  The defendants moved for a new trial.

This case was argued at the last March term.

*B. Sumner*, for the defendants.  As it does not appear that the cloths were in existence when the original written agreement was made, that agreement was not required, by the statute of frauds, to be in writing.  *Clayton* v. *Andrews*, 4 Bur. 2101.  *Towers* v. *Osborne*, 1 Stra. 506.  *Groves* v. *Buck*, 3 M. & S. 178.  *Cooper* v. *Elston*, 7 T. R. 14.  *Rondeau* v. *Wyatt*, 2 H. B. 63.  *Sewall* v. *Fitch*, 8 Cow. 215.  *Bennett* v. *Hull*, 10 Johns. 364.  *Crookshank* v. *Burrell*, 18 Johns. 58.  *Jackson* v. *Covert*, 5 Wend. 139.  *Mixer* v. *Howarth*, 21 Pick. 205.  *Spencer* v. *Cone*, 1 Met. 283.

The original agreement not being within the statute of frauds, the evidence of the subsequent oral agreement should have been received.  Whenever a new agreement is made, however

soon after the first — even though the parties have not separated — such new agreement is a waiver or alteration of the first, and binds the parties.    3 Phil. Ev. (4th Amer. ed.) 1461, 1462, 1477, 1478, and cases there cited.    6 Ves. 337, *note.    Cuff* v. *Penn*, 1 M. & S. 21.    *Keating* v. *Price*, 1 Johns. Cas. 22. *Fleming* v. *Gilbert*, 3 Johns. 528.    *M'Meen* v. *Owen*, 1 Yeates, 135.    *Watkins* v. *Hodges*, 6 Har. & J. 38.

*Codman*, for the plaintiffs.    The evidence of the oral agree ment was properly rejected, as it was offered to vary a contemporaneous written agreement.    Vattel, Book II. *c.* 17, §§ 265, 266.    3 Phil. Ev. (4th Amer. ed.) 1466, 1467, *note*.    A contract, which is within the statute of frauds, cannot be varied by parol, if the new contract be one which is also within the statute.    3 Stark. Ev. 1048, 1050.    1 Phil. Ev. (4th Amer. ed.) 559, 561, 562.    *Goss* v. *Lord Nugent*, 5 Barn. & Adolph. 58.    Chit. Con. (5th Amer. ed.) 110, 113, 777.    *Marshall* v. *Lynn*, 6 Mees. & Welsb. 109.    *Harvey* v. *Grabham*, 5 Adolph. & Ellis, 73, 74.    *Stowell* v. *Robinson*, 3 Bing. N. R. 928.    *S. C.* 5 Scott, 196.

The first and last agreements were within the statute of frauds. *Garbutt* v. *Watson*, 5 Barn. & Ald. 613.    *S. C.* 1 Dowl. & Ryl. 219.    Where goods would not exist in a manufactured state, were it not for an order, and the order is for goods to be sold, the case is within the statute.    *Smith* v. *Surman*, 9 Barn. & Cres. 568.    *Watts* v. *Friend*, 10 Barn. & Cres. 448.    *Dole* v. *Stimpson*, 21 Pick. 387.

WILDE, J.    This case comes before us on exceptions to the rulings of the court at the trial, whereby the evidence offered by the defendants was rejected, on the ground that the facts of fered to be proved would not constitute a legal defence.    The action is founded on a written contract, by which the defendants undertook to deliver to the plaintiffs, at a stipulated price, a certain quantity of cloths for printing, from time to time, between the 26th day of October 1838, and the first of March following.

The defendants admit that the written contract was not performed by them according to the terms of it ; and they rely on

two oral agreements, made subsequently to the execution of the written contract, by the last of which it was agreed that the plaintiffs should pay cash for the goods to be sent to them by the defendants — they discounting 5 per cent. on the stipulated price, whenever the goods sent should amount to the value of $1000, not before paid for ; that, under this last verbal agreement, the defendants delivered 150 pieces of goods, and that the plaintiffs refused to perform said agreement on their part. The defendants also offered to prove that each of these verbal agreements was made on a legal and good consideration. The question is, whether these facts, if proved, would constitute a legal defence to the action.

The general rule is, that no verbal agreements between the parties to a written contract, made before or at the time of the execution of such contract, are admissible to vary its terms or to affect its construction. All such verbal agreements are considered as varied by and merged in the written contract. But this rule does not apply to a subsequent oral agreement made on a new and valuable consideration, before the breach of the contract. Such a subsequent oral agreement may enlarge the time of performance, or may vary any other terms of the contract, or may waive and discharge it altogether.

This rule is laid down by Lord Denman, in *Goss* v. *Lord Nugent*, 5 Barn. & Adolph. 65, as a well established principle, in these terms :  " After the agreement has been reduced into writing, it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to, or subtract from, or vary, or qualify the terms of it, and thus to make a new contract ; which is to be proved, partly by the written agreement, and partly by the subsequent verbal terms engrafted upon what will be thus left of the written agreement."

The same principle, substantially, is maintained by numerous cases both in England and in this country. *Milton* v. *Edgworth*, 5 Bro. P. C. (2d ed.) 313. Bul. N. P. 152. 1 Mod 262. 2 Mod. 259. 12 Mod. 538. 3 T. R. 590. 1 East, 621

Cummings & others *v.* Arnold & another.

12 East, 578.   1 Esp. R. 54.   3 Stark. Ev. 1002.   Chit. Con (5th Amer. ed.) 108.   14 Johns. 330.   9 Cow. 115.   1 Johns Cas. 22.   3 Johns. Cas. 60.   3 Johns. 531.   12 Wend. 446 13 Wend. 71.   9 Pick. 298.   13 Pick. 446.   2 Watts, 456 5 Cow. 497.   7 Cow. 50.   3 Fairf. 441.   4 N. Hamp. 40 6 Halst. 174.   1 A. K. Marsh. 582.

In *Dow* v. *Tuttle*, 4 Mass. 414, it was decided that where the promisee of a note payable at a day certain contracts, at the time the note is given, not to demand payment of it, until a certain time after its maturity, such contract is a collateral promise, for the breach of which, if there be a legal consideration, an action may lie, but that it is no bar to an action on the note, when due by the terms of it.   But this case was decided on the ground that the agreement, offered to be proved in the defence, was made at the time of making the note, and was repugnant to the terms of it.   This decision, therefore, is not inconsistent with the doctrine maintained in the cases cited.

But the plaintiffs' counsel contends, that however the general principle may be, as to the effect of a parol agreement on a previous written contract, it is not applicable to the present case, the parol agreement being void by the statute of frauds ; and that to allow a parol agreement to be engrafted upon a written contract, would let in all the inconveniences which were intended to be obviated by the statute.   In considering this objection, we have met with many conflicting decisions, but for which, we should have had but little difficulty in disposing of the question raised.   And notwithstanding the doubts excited by some of these decisions, we have been brought to a conclusion, which coincides, as we think, with the true meaning of the statute. The language of the 4th section, (Rev. Sts. *c.* 74,) on which the question depends, is peculiar.   It does not require that the note or memorandum in writing of the bargain should be signed by both the contracting parties, but only "by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

" The principal design of the statute of frauds was," as Lord Ellenborough remarks, in *Cuff* v. *Penn.* 1 M. & S. 26, " that

parties should not have imposed on them burdensome contracts which they never made, and be fixed with goods which they never contemplated to purchase." The statute, therefore, requires a memorandum of the bargain to be in writing, that it may be made certain ; but it does not undertake to regulate its performance. It does not say that such a contract shall not be varied by a subsequent oral agreement for a substituted performance. That is left to be decided by the rules and principles of law in relation to the admission of parol evidence to vary the terms of written contracts. We have no doubt, therefore, that accord and satisfaction, by a substituted performance, would be a good defence in this action. So if the plaintiffs had paid for the goods, according to the oral agreements to pay cash or give security, and the defendants had thereupon completed the delivery of the goods contracted for, it would have been a good performance of the written contract. This has been prevented, (if the defendants can prove what they offered to prove,) by the plaintiffs' refusal to perform on their part a fair and valid contract. And it is a well settled principle, that if two contracting parties are bound to do certain reciprocal acts simultaneously, the offer of one of the parties to perform the contract on his part, and the refusal of the other to comply with the contract on his part, will be equivalent to a tender and refusal ; and in the present case, we think it equivalent to an accord and satisfaction, which was prevented by the fault of the plaintiffs, who agreed, for a valuable consideration — if what the defendants offered to show be true — to vary the terms of the written con tract as to the time of payment, and afterwards refused to comply with their agreement. If the defendants on their part had refused to perform the verbal agreement, then indeed it could not be set up in defence of the present action ; for the party, who sets up an oral agreement for a substituted performance of a written contract, is bound to prove that he has performed, or has been ready to perform, the oral agreement.

This distinction avoids the difficulty suggested in some of the cases cited, where it is said, that to allow a party to sue partly on a written and partly on a verbal agreement, would be in direct

*opposition* to the *requisitions* of the *statute* ; and it undoubtedly would be ; but no party having a right of action can be compelled to sue in this form. He may always declare on the written contract ; and unless the defendant can prove performance according to the terms of the contract, or according to the agreement for a substituted performance, the plaintiff would be entitled to judgment. We think, therefore, that the evidence of the oral agreements, offered at the trial, should have been admitted ; the same not being within the statute of frauds, and the evidence being admissible by the rules of law.

In support of this view of the case, I shall not attempt to reconcile all the conflicting opinions which have been held in similar or nearly similar cases, some of which appear to have been decided on very subtle and refined distinctions. I will, however, refer to a few decisions which bear directly on the present case. The case of *Cuff* v. *Penn*, 1 M. & S. 21, is a strong authority in favor of the defendants, as the facts, on which the decision in that case depended, are in all respects substantially similar to those offered to be proved in this action. That was an action of assumpsit for not accepting a quantity of bacon, which by a written contract the defendant agreed to purchase of the plaintiff, to be delivered at certain fixed times. After a part of the bacon had been delivered, the defendant requested the plaintiff, as the sale was dull, not to press the delivery of the residue, and the plaintiff assented. The defendant afterwards *refused to accept* the *residue*, and set up the statute of frauds in defence ; but the court held, that there was a parol dispensation of the performance of the written contract as to the times of delivery, which was not affected by the statute of frauds. Lord Ellenborough says, "I think this case has been argued very much on a misunderstanding of the statute of frauds, and the question has been embarrassed by confounding two subjects quite distinct ; namely, the provision of the statute, and the rule of law whereby a party is precluded from giving parol evidence to vary a written contract." "It is admitted," he adds, in another part of his opinion, "that there was an agreed substitution of other days than those originally specified for the performance

of the contract; still the contract remains. Suppose a delivery of live hogs instead of bacon had been substituted and accepted; might not that have been given in evidence as accord and satisfaction? So here the parties have chosen to take a substituted performance."

The principle on which this case was decided is laid down in several other cases, some of which have been already cited on the other point of defence.

At the argument of the case of *Goss* v. *Lord Nugent*, Parke, J. remarked, that "in *Cuff* v. *Penn*, and some other cases relating to contracts for the sale of goods, above £10, it has been held, that the time in which the goods, by the agreement in writing, were to be delivered, might be extended by a verbal agreement. But I never could understand the principle on which those cases proceeded; for the new contract to deliver within the extended time must be proved partly by written and partly by oral evidence." But there is no necessity for the plaintiff to declare partly on the written and partly on the oral agreement. He may always, as before remarked, declare on the written contract, and the defendant will be bound to prove performance according to the terms of it, or according to the terms of a substituted performance; and performance in either way may be proved by parol evidence. 2 Watts & Serg. 218

Lord Denman, who delivered the opinion of the court in *Goss* v. *Lord Nugent*, does not question the correctness of the decision in *Cuff* v. *Penn*; and his remarks on another branch of the statute of frauds seem to be confirmatory of the principle laid down by Lord Ellenborough in the latter case. "It is to be observed," he says, "that the statute does not say in distinct terms, that all contracts or agreements concerning the sale of lands shall be in writing; all that it enacts is, that no action shall be brought unless they are in writing; and there is no clause which requires the dissolution of such contracts to be in writing." In that action, however, the plaintiff declared partly on the written and partly on the verbal contract, and on that ground it was rightfully enough decided that the action could not be maintained.

In *Stowell* v. *Robinson*, 3 Bing. N. R. 928, and 5 Scott.

196, it was held, that the time for the performance of a written contract for the sale of lands could not be enlarged by a subsequent oral agreement, although that agreement was pleaded by the defendant as a bar to the action.   The plea was, that at the time stipulated for the performance of the written contract, neither party was ready to complete the sale ; and the time for the performance was agreed by the parties to be postponed. That decision seems to be founded on the doubt suggested by Parke, J. in *Goss* v. *Lord Nugent*, and upon the decision in that case, without noticing the distinction in the two cases.   And it appears to us, that the case of *Stowell* v. *Robinson* was decided on a mistaken construction and application of the statute of frauds ; and that the distinction between the contract of sale, which is required to be in writing, and its subsequent performance, as to which the statute is silent, was overlooked, or not sufficiently considered by the court ; otherwise, the decision perhaps might have been different.   We think there is no substantial difference, so far as it relates to the statute of frauds, between the plea in that case and the plea of accord and satisfaction, or a plea that the written contract had been totally dissolved, before breach, by an oral agreement ; either of which pleas would have been a good and sufficient bar to the action. We are aware that the principle on which *Stowell* v. *Robinson* was decided, is supported by other English cases cited ; but the principle on which the case of *Cuff* v. *Penn* was decided, is in our judgment more satisfactory, and better adapted to the administration of justice in this and similar cases.

It is to be observed in the present case, that the oral agreements, offered to be proved by the defendants, did not vary the terms of the written contract as to its performance on their part ; the only alteration was as to the time of payment by the plaintiffs.   Such an alteration, made on a good consideration, and before any breach of the contract, may, we think, be proved, without any infringement of the statute of frauds or any principle of law.

*New trial granted*