Carroll,  
Oct. 1, 1912.

### EMERY & a. v. DANA.

The surrender of an unrecorded deed of real estate revests the title in the grantor.

The interpretation of a deed is a question of law in that it is reviewable in the supreme court so that a finding of fact by the trial court as to the intention of the parties may be disregarded.

Where a grantee of real estate covenants to pay half of a debt secured by mortgage of the property and is thereupon to have an interest in the premises in common with the grantor, such payment is a condition precedent to the vesting of title, and no tenancy in common is created until the covenant be performed.

Where a grantee's agreement to pay a mortgage debt rests in his acceptance of a deed containing such a covenant, parol evidence is admissible to prove his non-acceptance, or that he requested and obtained a discharge from his engagement.

The fact that such grantee surrendered his deed to the grantor and was released from his engagement warrants a finding of an oral agreement on his part for a reconveyance and is sufficient to sustain a decree for the specific performance of such a contract.

A tenant in common may so hold against his cotenant as to make his possession
   adverse and a sufficient part performance of an oral contract to convey.
Specific performance of an oral contract to convey may be decreed although there
   has been no change of possession, when the facts authorize a finding that the
   claimant of the land will be defrauded if the agreement is not carried out.

BILL IN EQUITY, for partition and an accounting. The defendant
answered and filed a cross-bill asking that his title be confirmed
and that the deed under which the plaintiffs claim title be cancelled.
Trial at the May term, 1911, of the superior court before *Cham-
berlin*, J., who at the request of the parties stated the facts and,
subject to exception, ruled upon the facts found that the plaintiffs'
bill be dismissed with costs and that they be required to execute
a quitclaim deed of one half of the premises to the defendant, or
that a decree be entered in favor of the defendant quieting his
title to the premises.

The plaintiffs are heirs-at-law of Gilbert E. Emery and claim
under a deed of Dana to Emery. This deed, dated October 1,
1892, was a warranty in the usual form, the descriptive portion
being as follows: "A certain tract or parcel of land situate in said
Jackson in the county of Carroll and state of New Hampshire,
bounded and described as follows, to wit: Being the farm known
and called the Nahum M. Cook and is the same farm John K.
Hall secured judgment for against Gilbert M. Emery of said Jack-
son. Reference to said judgment and the mortgage deed upon
which said judgment is founded being had for a more particular
description. The above described being the same farm that we
now live on." Following the descriptive part, the deed contained
the following clause: "The said Gilbert E. Emery agrees to pay
one half of the purchase money on the above described farm,
and when paid for the said Emery is to have one half of said farm
in common undivided with said Dana." Other facts appear in
the opinion.

*Niles & Upton*, for the plaintiffs.

*Walter D. H. Hill*, for the defendant.

PARSONS, C. J. The defendant Dana, having title to and be-
ing in legal possession of a farm upon which he was living with
his wife's father and mother, desired assistance in carrying it on
and entered into an agreement with Gilbert E. Emery, his wife's

brother, by the terms of which Gilbert was to live on the farm, assist in carrying it on, pay one half of an existing mortgage indebtedness which represented the purchase price of the farm paid by Dana, and own one half the farm. Under this agreement, from 1885 to 1895, the brothers-in-law carried on the farm together, sharing in common the products of their joint efforts. Gilbert's father and mother also resided and had a home upon the farm. In 1892, Dana and his wife executed a deed to Gilbert which was duly recorded and which the plaintiffs (Gilbert's widow and children) claim conveyed an undivided half of the premises, subject to a mortgage debt which represented the purchase money paid by Dana. The consideration of this deed was the agreement made in 1885, whereby Gilbert was to work with Dana, carry on the farm, have a home there, furnish a home for the father and mother, and pay one half the mortgage debt. In the fall of 1895, Gilbert's wife became dissatisfied and wished to give up the place to Dana. Dana desired Gilbert to stay, the matter of the farm and debts was talked over, and Dana tried to induce Gilbert to remain and help carry on the farm and pay the debts, but he refused. The deed given by Dana to Gilbert was then delivered back to Dana for the purpose of surrendering to him all the right, title, and interest Gilbert had in the place. This delivery was accepted by Dana with that understanding, he tacitly agreeing to assume the debts, pay them, and maintain a home for their mother. Gilbert and his wife left the farm and never again returned there to reside, and Gilbert, who died in 1904, never claimed to Dana any interest in the farm. Since 1895, Dana has resided upon the farm, furnished a home for Mrs. Dana's mother, and made substantial improvements, claiming to own the premises and understanding the surrender of the deed gave him title to the premises, and making the improvements with that understanding.

The plaintiffs claim to own one half the premises by descent from Gilbert and ask for a decree of partition and an accounting. They base their claim upon the proposition that the surrender of the recorded deed by their ancestor to his grantee was in law ineffectual to revest in Dana the estate conveyed by the deed to Gilbert, and hence as matter of law they now own it. The statement of their claim discloses its entire lack of equity. It is based solely upon the mutual mistake of the parties to the transaction as to the legal effect of what they did. In this state the surrender of an unrecorded deed revests the title in the grantor. *Tomson* v.

*Ward,* 1 N. H. 9; *Farrar* v. *Farrar,* 4 N. H. 191; *Mussey* v. *Holt,* 24 N. H. 248; *Dodge* v. *Dodge,* 33 N. H. 487, 495. It does not appear whether Dana, when he accepted the surrender of the deed as a sufficient reinvestment of the title in him, knew that Emery had secured its record. It is to be presumed that he did, or could have readily ascertained the fact by examination of the paper, and hence that the mistake of both parties was as to the legal effect of what was done.

Assuming, then, that the surrender of the deed was of itself insufficient to effect the purpose of the parties—the reinvestment of the whole title in Dana—and that the plaintiffs, heirs of Emery, are not estopped by the act of delivery to set up its insufficiency, the next step is to inquire what interest in the real estate Emery acquired under the deed the consideration of which is found to have been Emery's agreement, in 1885, to make his home on the farm, to assist Dana in carrying it on and in furnishing a home for Emery's father and mother, and to pay one half the mortgage debt. The interpretation of the deed is a question of law, in that it is reviewable by this court so that the finding of fact by the trial court as to the intention of the parties may be disregarded. *State* v. *Railroad,* 70 N. H. 421, 433, 434.

Omitting the clause following the description, the deed conveys the whole farm free from incumbrance, but the plaintiffs concede that their interest is limited to one half in common and undivided. And it is apparent that the purpose of the parties, inartificially expressed, perhaps, is to be found in this clause, which is: "The said Gilbert E. Emery agrees to pay one half the purchase money on the above described farm, and when paid for the said Emery is to have one half of said farm in common undivided with said Dana." The purchase price of the farm was the amount of the mortgage given by Dana and for the whole of which he was necessarily personally liable. If full effect is given to all the language of the deed, it is apparent Dana did not convey to Emery the whole or one half of the farm free from incumbrances, but merely the right to obtain one half by paying one half the mortgage. When this should be done and Dana relieved from liability therefor, Dana's warranty would take effect and would protect Emery against the other half of the mortgage debt, which, as between Emery and Dana, Dana agreed to pay. If Emery therefore, by acceptance of the deed poll, covenanted to pay one half, he took no title to the land until his covenant was performed because his

ownership was made dependent upon such payment as a condition precedent. The plaintiffs therefore, to establish their title under the deed or their right to a clear title to one half from Dana, were required to show performance of the condition. Parol evidence tending to show such performance, if offered, was properly met by parol evidence from Dana tending to show that Gilbert not only had not performed, but had abandoned all intention of performing, the condition precedent to the vesting of title in him.

If in the absence of any limitation as to the time within which the covenant should be performed it should be inferred a reasonable time was intended (*New England Box Co.* v. *Prentiss*, 75 N. H. 246), such time would be one within which it would be equitable for him to do so. Emery's covenant to pay rests in parol—his acceptance of the deed poll. As it would be competent to show by parol that he never accepted the deed, and hence never agreed to make the payment, it must be equally competent to show in the same way that he had asked for and received a discharge from such engagement. Whatever the legal effect of such abandonment may be, it is clear that the plaintiffs have no title to the premises until performance of the condition precedent, which they have not performed or offered to perform. The conveyance being upon a condition precedent, no estate in the land passed until performance of the condition. *Rollins* v. *Riley*, 44 N. H. 9, 12. Hence a tenancy in common with Dana by Emery or the plaintiffs is not established. There was therefore no error of law in the order dismissing the bill, as the facts were presented. Whether the plaintiffs, after this lapse of time and upon the facts disclosed, have now an equitable right to perform the condition so that the title to one half the farm may vest in them, and they then after performance become tenants in common with the defendant, need not be considered.

The defendant by his cross-bill asks specific performance of Emery's agreement to convey to him his interest in the farm, and a decree has been made, subject to exception, ordering such a conveyance by the plaintiffs. Disregarding the plain meaning of the deed, and assuming that by it Emery acquired title to one half the farm, the exception to the decree cannot be sustained. The plaintiffs contend, in support of their exception to the decree, that there was no evidence of an oral agreement to reconvey to Dana; but there was evidence of an attempt to reconvey by the surrender of the deed, from which it could be inferred that Emery

had. agreed to do what he attempted to do. Dana's release of
Emery from his contract to assist in carrying on the farm, live
there and furnish a home for the father and mother, and pay one
half the mortgage, which could properly be inferred from his
assent to Emery's ceasing to carry out the contract, was a suffi-
cient consideration, without reference to Dana's tacit agreement
to do these things, which was fairly inferrible from the evidence.

It is further objected that there can be no decree for specific
performance because there has not been on the part of Dana
sufficient part, performance to take the case out of the statute.
This claim is based upon the proposition that as between tenants
in common there can be no sufficient change in possession to avoid
the bar of the statute.   There are authorities which sustain this
proposition; and as said in *Rhea* v. *Jordan*, 28 Grat. 678, 682,
"if the continued possession stood alone, perhaps that might be
so."   When, however, the party claiming specific performance has
not only actually taken possession to the exclusion of the other
tenants, but has also made payment and valuable improvements,
these acts together, in most jurisdictions, make a sufficient part
performance.   *Town* v. *Needham*, 3 Paige 545; *Barrett* v. *Forney*,
82 Va. 269; *Rhea* v. *Jordan*, 28 Grat. 678; *Littlefield* v. *Littlefield*,
51 Wis. 23; *Peck* v. *Stanfield*, 12 Wash. 101; 36 Cyc. 666.   If one
tenant in common enter into possession, claiming either in his own
right or in the right of another the entire title, such entry and
claim will be in law an ouster of the cotenants and a trespass for
which trespass *quare clausum* may be maintained.   *Thompson* v.
*Gerrish*, 57 N. H. 85, 86;   *Wood* v. *Griffin*, 46 N. H. 230, 237.
Possession so retained, with the knowledge and acquiescence of the
other tenants, for the period of the statute of limitations, will con-
stitute an adverse possession which will bar the title of the other
tenants.   *Perkins* v. *Eaton*, 64 N. H. 359; *Clark* v. *Wood*, 34 N. H.
447; *Gage* v. *Gage*, 30 N. H. 420, 426.

Dana went into exclusive possession under claim to the whole
under a conveyance from Emery, the only defect in which is the
record of the paper surrendered to him as a conveyance.   Occu-
pancy under that, under the circumstances disclosed, for the
statutory period, would have perfected his right, although the
supposed conveyance was legally defective.   *Jackson* v. *Tibbits*,
9 Cow. 241, 253.   Dana's occupation is a few years short of the
statutory period; but a possession sufficiently exclusive and noto-
rious to be adverse cannot logically fail to be effectual as a part

performance of an oral contract to convey. The ground upon which it is held that possession by one cotenant cannot be deemed part performance is that the possession of one cotenant is the possession of all, and the possession is not referable to the contract, but to the tenancy. *Workman* v. *Guthrie*, 29 Pa. St. 495,— 72 Am. Dec. 654, a leading case in support of the rule that as between tenants in common there cannot be a sufficient change of possession to take a parol contract to convey land out of the statute, concedes that one tenant in common may acquire title against his cotenants by adverse possession. If the possession of one cotenant must always as matter of law be referred to the tenancy, this would be impossible. If it is not necessarily in all cases referable to the tenancy, cases may arise when such possession is plainly explainable only by the contract.

In *Wainman* v. *Hampton*, 110 N. Y. 429, the conclusion that the possession claimed was not sufficient to constitute part performance is put upon the ground that it was not for an instant hostile in such sense that, without more, it could if continued have created a title by adverse possession. Conversely, if the possession is such as constitutes an adverse holding, logically it may constitute part performance of an oral contract to convey. The character of the possession taken and held must be found from the evidence. It is doubtful if the rule for which the plaintiffs contend goes farther than that "where a plaintiff claims as purchaser of land to the possession of which he and others are entitled as tenants in common, or joint tenants, no mere possession can avail as a part performance." Pom. Spec. Perform., s. 121. This may be conceded as the law without sustaining the exception; for in this case there was a formal (though ineffectual) attempt to convey sufficient at least to characterize the possession taken, exclusive possession as owner, payment by release of the stipulations of the grantor's contract and their performance by the grantee, and valuable improvements. These facts authorize a finding that to permit Emery's heirs to avoid his oral contract, scrupulously observed by him in his lifetime, would be a fraud upon the defendant.

It is upon this ground that equity decrees the specific performance of an oral contract to convey land. *White* v. *Poole*, 74 N. H. 71, 73, and cases cited. The statute is avoided by the fact of fraud— not arbitrarily by the change of possession. Taking possession under the contract and making improvements are evidentiary

facts which authorize the finding of fraud. *Stillings* v. *Stillings,* 67 N. H. 584. Where the facts authorize the finding that the claimant of the land will be defrauded if the oral contract is not carried out, specific performance may be decreed although there has been no possession taken. *Rhodes* v. *Rhodes,* 3 Sandf. Ch. 279; Br. St. Fr., *s.* 463. In *Weeks* v. *Lund,* 69 N. H. 78, this principle was not denied, but specific performance was refused upon the ground that the services forming the consideration were such as could be adequately compensated in money. Here the family relationship may have been, and doubtless was, an element in the contract that Gilbert should live on the farm and help carry it on, and provide a home for the father and mother. The release of Gilbert from these engagements and the performance of his agreement to furnish a home for his mother by Dana might be held to constitute services the value of which could not be adequately measured in money, so that the decree might be sustained without reference to the character of Dana's possession.

But without reference to these considerations, the circumstances under which Emery abandoned the farm to Dana, Dana's subsequent exclusive occupation under claim of title, his payment of the consideration in release and performance of Emery's obligations, and the improvements made by him upon the faith of the contract, clearly authorize the finding that to permit the plaintiffs to set up the statute would be a fraud upon the defendant. The decree of specific performance was authorized. Relief may be afforded in this way, or, the deed having been long since surrendered, by a decree cancelling it. *Sipola* v. *Winship,* 74 N. H. 240, 244; *Tucker* v. *Kenniston,* 47 N. H 267, 270; 2 Sto. Eq. Jur., *ss.* 700, 705.

*Exceptions overruled.*

All concurred.