Hillsborough, }
May 3, 1927. }

GLADYS D. WARREN *v.* DINSMORE O. DODGE & a.

*John R. Spring, Frank B. Clancy,* and *Thomas F. Moran (Mr. Spring* orally), for the plaintiff.

*Thorp & Branch (Mr. Branch* orally), for the defendants.

ALLEN, J. The defendants take the position that the oral extension of time was within the statute of frauds (P. L., c. 327, s. 1), and that when equity permits the enforcement of an oral contract to convey real estate, it must appear that the plaintiff has taken possession of the property and improved it, that fraud in the inception of the contract is not enough to be shown but the plaintiff, failing relief, must be placed in the position of a wrongdoer by reason of what he has done in pursuance of the contract, and that the agreement must be shown by acts unequivocally referable thereto.

It may be noted at the outset that the modification or alteration of a written contract by a subsequent parol agreement does not violate the parol evidence rule, and it is well settled that the terms of writings may be thus validly changed. *Robinson* v. *Batchelder,* 4 N. H. 40, 45; *Buel* v. *Miller,* 4 N. H. 196; *Grafton Bank* v. *Woodward,* 5 N. H. 99, 107; *Cummings* v. *Putnam,* 19 N. H. 569, 571; *Hill* v. *Huntress,* 43 N. H. 480. The question, however, remains as to the validity and effect of an oral agreement modifying a contract required by statute to be in writing.

Such agreements have been fruitful sources of litigation, and some conflict of views is to be found in their consideration. In Massachusetts the oral agreement has been enforced on the theory that it relates to the manner in which the original contract is to be carried into effect and that as a regulation of performance it is not within the scope of the statute of frauds. *Cummings* v. *Arnold,* 44 Mass. 486; *Stearns* v. *Hall,* 63 Mass. 31; *Conroy* v. *Toomay,* 234 Mass. 384. In other jurisdictions it is held that the contract may not be thus modified, and the weight of authority would seem to accord with this view. See cases cited in L. R. A., 1917 B, 147. The plaintiff cites *Ewins* v. *Gordon,* 49 N. H. 444, as authority for the validity of the oral modification, but at most the case goes no further than to suggest such validity and expressly avoids such a ruling in support of the conclusion reached.

But the legal character of the oral modification does not determine its effect when it has been acted upon. If invalid from an executory standpoint, it may yet have valid force and effect when wholly or partly executed. If it is invalid, it may be revoked or abrogated

by either party at any time until action has been taken in pursuance of it. But when it has thus been carried into effect, recognition of the situation thereby brought about is not a disregard of the statute. It is no different in its general legal aspect than the simple case of a purchaser who has paid the price. If the contract is oral, the price may be recovered. If, going further, the purchaser has taken possession and made improvement, he is entitled to a deed. While this is often called a right to specific performance of an oral contract, in strictness it is an equitable right arising from what has been done under the contract rather than an enforcement of the contract itself. The equitable principle of relief against fraud in such cases is not in conflict with a statutory declaration against the maintenance of an action on the contract alone. The basic principles of the law relating to unjust enrichment, estoppel, accord and satisfaction, and fraud are applicable alike to situations in which statutes are, and are not, involved. A rule of law discriminating between the effect of contracts made unenforceable by statute and contracts made illegal by statute is not to be challenged as a defiance of the legislative will, but is an acceptance of that will because the legislature makes the distinction with the difference of result understood. And under the principle that the legislative readoption of a statute carries with it all existing judicial construction relating thereto, it cannot be urged that the statute of frauds as now here in force has been judicially invaded by establishing rights from the relations of parties arising out of contracts within the statute.

When a contract required by statute to be in writing has been orally modified and the plaintiff has performed it, or has taken action in reliance on it, as thus modified, the modification has been sustained when carried into effect on principles of accord and satisfaction and of estoppel. In such cases, the oral modification operates as a defense to a claim of the breach or non-performance of the written contract rather than as giving any right of action for the breach of the modification. Whatever may be thought of the character of the oral modification, when action has been taken in reliance on it, the effect of such action on the written contract, not to alter it, but to show the equivalent of compliance with it, may be claimed. If suit may be brought only for breach of the written contract, the plaintiff may justify failure to perform his part of it by showing that he acted in reliance on the defendant's agreement to dispense with performance or to accept something in substitution therefor. The statute is not thereby disregarded. It is not the enforcement of the oral agreement

that is sought, but a legal excuse for non-compliance with the terms of the written contract that is claimed. "This oral extension of the time of payment became no part of the contract so as to bind the parties. Because it was not in writing, as well as because there was no consideration for it, defendant might have repudiated it and demanded payment at any time. But in such case he could not declare the contract forfeited for nonpayment until the plaintiff had a reasonable time thereafter in which to make payment, because the failure to pay on due day was caused by the defendant's own conduct." *Scheerschmidt* v. *Smith*, 74 Minn. 224, 228. "We know of no principle of law which will permit a party to a contract, who is entitled to demand the performance by the other party of some act within a specified time and who has consented to the postponement of the performance to a time subsequent to that fixed by the contract, and where the other party has acted upon such consent and in reliance thereon has permitted the contract time to pass without performance, to subsequently recall such consent and treat the non-performance within the original time as a breach of the contract." *Thomson* v. *Poor*, 147 N. Y. 402. " . . . the waiver of payment at the time fixed in a contract for the sale of real estate, or the extension of the time for such payment, is not such a variation of the terms of the written contract as to exclude it from being received in evidence in a court of equity; and . . . in all cases where such waiver or extension of time has been given, either by parol or otherwise, and the purchaser has acted upon the faith of such extension or waiver, the courts have held the vendor bound by his contract." *Marsh* v. *Bellew*, 45 Wis. 36, 52. The case of *Bonicamp* v. *Starbuck*, 25 Okla. 483, cited by the defendants, expressly excepts from its application cases where the oral agreement has been acted upon.

The plaintiff here, having relied upon the oral extension of time given by the defendants, is in the position of a party who has performed his part of the contract. She did all that they required her to do, and if they accepted less or other than the contract called for, they may not say after she has taken them at their word and acted thereon that she thereby lost her rights under the contract. Enforcement of the doctrine of estoppel in such a situation is no limitation or qualification of the statute of frauds. The written contract remains unchanged, but the defendants by reason of the situation brought about by reliance upon their own words and conduct may not be heard to say that the plaintiff has not lived up to it. So far as they made a present to her of further time and so far as she received

and acted on it, it was a concession of their rights under the contract. The concession did not alter the terms of the contract. That the result would be the same if the extension had been by written contract does not mean the validation of the extension as an oral contract. The result comes about from action taken upon the extension, and the effect of such action the statute does not undertake to determine.

The cases cited by the plaintiff, *Ewins* v. *Gordon*, 49 N. H. 444, *Pierce* v. *Morse*, 65 N. H. 196, and *Green* v. *Merrill*, 76 N. H. 50, are all authority for the proposition that an oral extension of time given and acted upon is a legal equivalent for compliance with the terms of a written contract as to time. While in those cases it was made a supporting argument that the time prescribed by the written contract was not of essential importance, and while in the case at bar the argument may be doubtfully made in view of the clause for application of the installment paid towards the purchase price as liquidated damages if payment of the balance were not made within the time limit, the difference is not of essential consequence. The release or surrender of a valuable right is no less effective than the yielding of one not regarded as of importance. "A party to a contract for the sale of land, who knowingly consents or agrees to a postponement of the performance by the other at the time specified of some stipulation for his benefit, cannot, after the other has acted upon such consent, avail himself of the default, and treat the contract as forfeited, although the performance of the stipulation at the time specified may have been made of the essence of the contract." *Neppach* v. *Company*, 46 Ore. 374, 397.

As to the defendants' contention that there must be possession and improvement as a condition for the grant of equitable relief in ordering the conveyance of real estate for the sale of which an oral contract has been made, it may be said that no improvements are shown to have been made and that the plaintiff's possession may not be referable to the contract. If the contention were applicable, it could not be maintained. Whatever in the earlier cases may have been the strictness of the requirement of possession and improvement, the later cases have so far modified the requirement as to substitute a test of fraud or irreparable injury on the purchaser who has performed his part of the agreement. *White* v. *Poole*, 74 N. H. 71, and cases cited. "Where the facts authorize the finding that the claimant of the land will be defrauded if the oral contract is not carried out, specific performance may be decreed although there has been no possession taken." *Emery* v. *Dana*, 76 N. H. 483, 490.

See also *Muir* v. *Bartlett,* 78 N. H. 313. The contention, however, is not available, since, as has already appeared, the contract which the plaintiff seeks to enforce is in writing, and the agreement to extend the time for performance when acted upon operated to bar the defendants from claiming her non-performance of it.

The further claim that the plaintiff seeks to enforce an oral contract by reason of the defendants' fraud in its inception is likewise inapplicable. The written contract being the foundation of the suit, the fraud was in the means adopted to induce the plaintiff not to perform her part of it, and the case is not of substituting fraudulent conduct as an equivalent for the requirement of a writing, but is one of showing that non-performance of the contract was not a breach or disregard of it. The plaintiff, doing what the defendants led her to do, might not be sued for not keeping her part of the contract, nor might the defendants take advantage in any way of such failure. By reason of the basic nature of the plaintiff's claim the other points relating to the statute of frauds as made by the defendants do not call for discussion.

The original contract with the plaintiff was executed by a defendant who had written authority therefor from the other defendants, and it was this defendant who extended the time. It is claimed that he lacked authority to take such action on the grounds that the extension was against the interests of the other defendants and that he was at the same time acting as agent for the plaintiff so as to be placed in the position of representing conflicting interests.

Neither of these grounds may be maintained. As the findings are construed, they adopt the position that the extension was an act within the scope of the agent's authority. This construction of the power of attorney is sustained. Construed in the light of the situation, the authority to make a sale included general authority to carry the sale made into effect and to do everything in connection with it that an owner acting in his own interest might be expected to do, except in giving a deed. The agent was the administrator of the estate of the common ancestor of the parties, and it was understood that he was to settle all of the estate. The realty was its chief part, and the power of attorney was to remove the limitation of the agent's authority as administrator to dispose of the personalty only and enable him to dispose of the realty as well. The power expressly ratified whatever bargains he might make "in the premises" and bound the owners to give a deed to the purchaser procured upon demand. From the special circumstances shown, its meaning as

giving the agent broad and general authority to represent the owners in the disposal of the property and in managing its disposal under such sale as might be made is not doubtful. He was to look after and attend to the execution of the sale as well as its making. If it is the general rule that an agent to sell has no authority to waive or modify the terms of a contract of sale entered into, the language of the instrument conferring authority under the facts appearing takes the case out of its application.

Since the agent might do whatever the owners might be expected to do, the plaintiff was entitled to deal with him on that basis. As to the claim that it was against the owners' interest to give the extension, this does not conclusively appear. The contract included a settlement of the plaintiff's claim against the estate of the owner from whom the parties derived their title. While this claim has been termed a fancied one and while its merit and amount were not shown, it was regarded as of enough importance to make its release a part of the consideration for the purchase of the property. Conceding that the contract made time of essential importance, it did not necessarily appear that the release of the claim was unimportant, so as to make the extension operate on the whole to the disadvantage of the defendants. Also, when the contract was made, it was understood that the plaintiff would have to sell the timber in order to pay the purchase price. The defendants were then, and continued to be, concerned to have their shares turned into money. Extension of the time, in contrast with the plaintiff's non-performance without extension, was not so clearly detrimental to the defendants as necessarily to give notice of a wrongful exercise of authority in its grant. If it may be found that one of the owners had given notice of objection to the extension, it may also be found that she later ratified and confirmed what was done. A finding that the extension was such an act as might be expected of the owners in their own interest is accordingly justified. While the plaintiff is charged with notice of the limits of the agent's authority, a finding that the agent acted within such limits is a reasonable one. The extension was on the face of things an authorized act, and that it prejudiced the defendants to the plaintiff's knowledge was for the defendants to prove affirmatively. That the proof was conclusive is not to be successfully asserted.

The ground that the agent acted for the plaintiff in such a way as to indicate a conflict of interest in extending the time, in support of the claim of lack of authority, would appear to be meritorious but for

the fraud practiced on the plaintiff. If the agent had been honest, his action in giving the extension could not have been in behalf of both parties. The extension would have been a service for the plaintiff in helping her to make a favorable sale of the timber, and such service would have been an interference with the exercise of his judgment in the defendants' behalf in determining whether their interest called for the extension. His disqualification to act would thus be apparent, and good faith would have been impossible. He was a partisan rather than an arbitrator, as related to the defendants' interests. *Wilson* v. *Atwood*, 81 N. H. 61, 63.

But the agent's fraud in the defendants' behalf in pretending to help the plaintiff when he was in fact undertaking to injure her estops the defendants from allowance of the claim. His bad faith in giving the extension was towards the plaintiff and not towards the defendants. He rendered no service for the plaintiff which placed him in an inconsistent position. On the contrary his scheme of fraud led her into a trap from which she had no escape except by the extension, and to say that such escape was barred because she knew he was the defendants' agent would be to uphold rather than defeat the fraud. Acting within the scope of his agency for the owners, he manœuvered and lured her into a position of threatened loss of her rights. Having defrauded her, he had a duty to undo the fraud, and his fraud being chargeable to the owners as committed while acting in their behalf and under the authority given him, they may not say that the way of escape is not open because authority therefor was not given. In denying such authority they ratify the fraud, by seeking to take advantage of the situation it brought about. *Presby* v. *Parker*, 56 N. H. 409; *McDonald* v. *Insurance Co.*, 68 N. H. 4; *Anderson* v. *Scott*, 70 N. H. 350.

The plaintiff is not to be charged with bad faith merely because of her knowledge that her uncle was the defendants' agent. She had the right to assume his honesty towards her, and had he been honest, there would have been no necessity for the extension. The agent's duality of honest service did not spell incompatibility. As he gave her a fraudulent rather than an honest service, and was thus her enemy and not her friend, she may take the position that she had no real service. *Jones* v. *Emery*, 40 N. H. 348. And since the defendants are chargeable with their agent's conduct while acting within the scope of his agency, the legal situation is the same as though they had expressly engaged him to practice the fraud. The plaintiff's right is not to an authority which did not exist or might

not be exercised, but is to have the defendants charged with responsibility for the doings of their agent within the course of his service for them.

Respecting the claim that the plaintiff's conduct after the expiration of the time fixed by the written contract estopped her from claiming the benefit of it and of its extension, various incidents are urged in its support. It does not appear necessary to consider them in extended detail, as would be the case if this court had revisory power. To the finding that until a time several months after the deed of the timber was given, the plaintiff had no reason to suspect that the agent was not "protecting her in her contract to purchase the farm," no exception was taken. The finding being unchallenged, it meets any argument that the plaintiff's conduct was so inconsistent with an understanding that the contract was still alive as to make such an understanding impossible. If she had faith in her uncle and relied implicitly on his assurances, she was entitled to take matters for granted. If the fraud closed her eyes to the ordinary import of matters brought to her notice, she is not to be charged with notice of such import. So far as she received money for herself from the sale of the timber, it should be applied towards the amounts due her under the decree, if the decree does not so contemplate. But that the payment of the money and the circumstances in connection with it necessarily showed her the defendants' intention to regard and treat the contract as no longer operative and in force cannot be considered in view of the acceptance of the finding that it did not show it. Whatever claim for services and expenses the plaintiff's uncle may have against her may be maintained if his fraud does not bar it. The decree does not undertake to determine the claim. It is accordingly unnecessary to consider how far her conduct under an understanding that the defendants had repudiated the contract would constitute an estoppel against her right to its performance. See *Duval* v. *Insurance Co.*, 82 N. H. 543.

Exception was taken to some of the special findings on the ground of lack of evidence to support them. One of the findings related to the time when the agent's fraud was conceived, and it is claimed in connection with the denial of fraud that the facts are conclusive in showing that a fraudulent purpose could not have been formed at the time found. The finding is of a time when the agent first found out that the timber would bring more than the price the plaintiff was to pay for the farm with the timber. An oral contract for the sale of the timber was made after the contract for the plaintiff's

purchase of the farm and before the written extension of the latter contract. Whether the finding means that the oral contract, of which the agent had notice, gave him his first knowledge that the timber would sell for more than the price the plaintiff was to pay for the farm is not entirely clear, but upon the assumption that it does, the finding was a reasonable inference from the evidence. When the agent learned of the oral sale of the timber, he advised the plaintiff to repudiate it as inadequate and calling for unsatisfactory terms, and after she accepted the advice he assisted her in the repudiation. He made no effort to have the purchaser give a better price or more satisfactory terms, and his purpose to have the sale miscarry might well be of bad faith and to injure the plaintiff. While the fact that the written extension of the contract for the sale of the farm was not made until after such repudiation of the oral sale of the timber may be argued as an act of good faith and thus indicate that the intent to defraud did not originate until after such extension, the argument goes only to the weight and force of the finding and does not destroy it. The written extension may well have been given with the agent's purpose in mind at the time that the plaintiff should not take any advantage by it, and as a device to make her continue to believe that he was interested and acting in her behalf. The evidence of the fraud as practiced and carried out justifies the finding as to the time of its inception.

Another finding relates to the agent's motive in making inquiry if an offer for the timber would hold good after the expiration of the written contract for the sale of the farm. The evidence sustains the finding. The purpose to deprive the plaintiff of the benefit of the sale of the timber and to acquire its benefit for himself may be found to show that the object of his inquiry was to be assured that the sale would not be lost by delay beyond the time limit of the contract.

The finding that the agent's purpose in buying the share of one of the owners was for his personal advantage was also warranted. While the owner insisted on full payment for her share, there was evidence that at the time she conveyed she made the requirement that her deed should inure to the plaintiff's benefit. The agent's disregard of the trust thus imposed and his retention of the purchase for himself suffice to support the finding.

*Exceptions overruled.*

*Branch*, J., did not sit: the others concurred.