Hillsborough
No. 6744

DAVID SAWIN *& a.*

v.

HAZEL M. CARR *& a.*

July 19, 1974

*McLane, Graf, Green & Brown* and *John A. Graf* and *Grenville Clark III* (*Mr. Graf* orally) for the plaintiffs.

*Alexander J. Kalinski,* by brief and orally, for the defendant Hazel M. Carr.

*Peter McDonough,* by brief and orally, for the defendant Edward Bennett.

PER CURIAM.   This is a bill in equity for specific performance and injunctive relief on behalf of David and Marcia Sawin against Hazel M. Carr and Edward Bennett in which plaintiffs allege that Mrs. Carr orally agreed to convey to them certain real property in Manchester, that in reliance upon the promise, they moved onto the property making valuable improvements, but that Mrs. Carr subsequently sold the property to defendant Edward Bennett, thereby working a fraud upon them.

Trial by a Master (*Chester C. Eaton,* Esq.) with a view resulted in judgment for the plaintiffs. During the trial defendants seasonably excepted to the denial of their motions for nonsuit and for a directed verdict. The Trial Court, *Loughlin,* J., approved the master's report and reserved and transferred defendants' exceptions to rulings by the master including the denial of their motions for nonsuits and directed verdicts and to set the master's report aside.

In the fall of 1966, plaintiffs entered into an agreement with Mrs. Carr to occupy and repair the property in question located at 35 Corning Road, Manchester. At the time of the agreement the premises were in such disrepair as to be uninhabitable. Plaintiffs occupied the premises from the summer of 1967 until May 21, 1971, when Mrs. Carr sold the property to defendant Bennett. During the period of their occupation, the plaintiffs made substantial repairs to the premises and made periodic payments at the rate initially of $25 per month which they increased to $50 per month for a total of $1,835. Mrs. Carr gave receipts for all payments made by the plaintiffs which recited they were "to apply towards purchase of the property." On May 21, 1971, Mrs. Carr sold the property to defendant Bennett without any prior notice to plaintiffs of her intention to do so. Subsequent to the sale to Bennett, Mrs. Carr accepted two more payments from the plaintiffs, again writing on the receipts "To apply towards the purchase of the property."

The defendants filed separate briefs but their claims are similar except for defendant Bennett's argument that the master erred in not finding him to be a bona fide purchaser for value. *Rogers v. Jones,* 8 N.H. 264 (1836), relied upon by Bennett for the argument that the occupation of the premises by the Sawins did not require him to inquire as to their interest in the property does not support defendant Bennett's position. Holding that possession may by prima facie evidence of title and sufficient notice to put a third party on inquiry the case went on to hold that it "is by no means conclusive evidence of the existence of a title in the party in possession." *Id.* at 270-71. Bennett failed to make an inquiry prior to purchase although a full inquiry would have disclosed that the Sawins had a valid claim to the property, whereas in the *Rogers* case a full inquiry would not have disclosed any such valid claim. Where there is reason for a party to inquire, neglect to do so is at his peril, "and he is in such cases chargeable, constructively, with notice of what he might have learned on examination". *Id.* at 266; *see also Pratte v. Balatsos,* 101 N.H. 48, 50, 132 A.2d 142, 144 (1957).

In addition to Bennett's knowledge of the Sawins' posses-

sion of the property other testimony in the case supported the master's finding that Bennett knew or should have known that plaintiffs and Mrs. Carr "had some agreement for the purchase of the property." Mrs. Carr testified that she told Mr. Bennett that if she decided to sell the property and the Sawins wanted to purchase it, it was theirs. His denial of her testimony did not compel a finding in his favor, but merely created a conflict in the testimony that was for the trier of fact to resolve. *Plimpton v. Theos,* 113 N.H. 651, 652, 312 A.2d 686, 687 (1973); *Guy v. Hanley,* 111 N.H. 73, 276 A.2d 1 (1971); *Kalman v. Hutcheson,* 111 N.H. 36, 40, 276 A.2d 260, 263 (1971).

Defendants claim that the agreement between plaintiffs and Mrs. Carr was too indefinite as to time and price to support a decree of specific performance. There was evidence that the parties agreed on a purchase price of $8,500 plus a down payment and that the Sawins' efforts in restoring the property were to act as the down payment. There was also testimony in support of the master's finding that the sale was to be consummated when the Sawins had paid one-third of the purchase price. While it is true that contracts, both oral and written, must be definite in order to be enforceable, the standard of definiteness is one of reasonable certainty and not "pristine preciseness". *Grayson v. LaBranche,* 107 N.H. 504, 505, 225 A.2d 922, 923 (1967); *White v. Poole,* 74 N.H. 71, 73, 65 A. 255, 257 (1906). The fact that a specific calendar date is not established for time of performance or that the purchase price involves the performance of work tasks by the purchasing party is not fatal to specific performance. "While the court cannot make a contract for the parties, this does not prevent it from ascertaining from all the evidence whether the parties made a binding agreement and what it was in spite of some ambiguity arising from a term that is missing or left blank." *Grayson v. LaBranche supra.*

Defendants contend that since the Sawins fell eight months behind in their payments, they breached the agreement first and Mrs. Carr was justified in treating the agreement as terminated when she sold to Bennett. The master found that time was not of the essence in performance of the contract and that the Sawins had not breached the contract when

they fell behind in payments. The evidence was that Mrs. Carr spent part of her winters in Florida and during those periods the plaintiffs fell from one to four months behind. There was no evidence that Mrs. Carr objected to the procedure of the Sawins paying the back payments a short time after her return. There was evidence that the Sawins raised the monthly payments from $25 to $50 in order to accelerate the closing date and had offered to pay the balance of the purchase price but that Mrs. Carr expressed reluctance at completing the transaction. The question of whether the delay in payments was a material breach of the agreement was one of fact for the master to determine from all the facts and circumstances of the case, and there was substantial evidence to support the master's finding that time was not of the essence and that the late payments were not a material breach of this agreement. *Guy v. Hanley*, 111 N.H. 73, 75-76, 276 A.2d 1, 3 (1971); *Newcomb v. Ray*, 99 N.H. 463, 466, 114 A.2d 882, 883-84 (1955); *see Parks v. Company*, 94 N.H. 454, 455, 55 A.2d 312, 313 (1947); Annot., 55 A.L.R.3d 10, 34-39 (1974).

Defendants assert that the improvements and repairs made by the plaintiffs were so minimal that they were insufficient to remove the agreement from the Statute of Frauds. There was ample evidence to contradict this contention with both testimony and supporting exhibits to the effect that the plaintiffs performed a vast amount of labor on the property. When the Sawins began their restoration of the property the uncontradicted evidence was that the interior of the house was filled with debris including beer bottles, broken furniture, papers, old clothing, cans, animal and human waste and other rubbish. The exterior of the house was badly in need of paint and repair and the grounds were strewn with debris; all of the windows were out or broken; the wiring had been ripped out; the water pipes had frozen and burst; there were holes in the walls; the toilets and sinks were broken; the septic system was not working properly; and the well was filled with debris and was unusable. Since 1963 the property had been condemned as uninhabitable.

Receipts admitted into evidence substantiated the master's finding that the Sawins expended $1,700 for materials. The

testimony supported the master's finding that the value of the Sawins' labor was $2,500 and that the substantial improvements made were sufficient part performance to remove this case from the Statute of Frauds. RSA 506:1; *Warren v. Dodge,* 83 N.H. 47, 51, 138 A. 297, 300 (1927); *Emery v. Dana,* 76 N.H. 483, 489-90, 84 A. 976, 978 (1912); *White v. Poole,* 74 N.H. 71, 65 A. 255 (1906); Restatement (Second) of Contracts § 197, at 452-54 (Tent. Drafts Nos. 1-7 rev. & ed. 1973).

A review of the transcript and consideration of defendants' remaining exceptions and their objection to the master's report as a whole reveal no errors of law which would warrant a reversal of the decree in this case. *Sheris v. Morton,* 111 N.H. 66, 276 A.2d 813 (1971). *See also Stephenson v. Stephenson,* 111 N.H. 189, 191-92, 278 A.2d 351, 353 (1971); *Brown v. Teel,* 108 N.H. 365, 236 A.2d 699 (1967).

*Defendants' exceptions overruled.*