## Brown *vs.* Silsby & Trustees.

10   521<br>69   397

Where one summoned as trustee has goods of the principal in his hands, and instead of retaining them, to be applied in satisfaction of the debt, sells them, and discloses that fact; he is to be charged as trustee, for the value of the goods. The amount for which they were sold may be *prima facie* evidence of the value, but it may be shown that it was greater or less than the actual value.

If the trustee sell the goods in his hands on a credit, without authority, the credit is given at his own risk.

A trustee is to be charged for money collected after the service of the process on demands due the principal. If he loans the money, that will not discharge him.

And he is chargeable also for all interest that he receives, or secures, on sales, or loans.

But he is not to be charged merely because he has changed the security, by settling a note or an account and taking a note payable to himself.

Trustees are to be allowed for necessary services and expenses in taking care of property in their hands. They may be allowed for services in selling, if it appear affirmatively that the sales were advantageous to the creditor. And they are entitled to compensation for collecting money, on demands due the principal, and for the care and custody of it. But they cannot be allowed for counsel fees in suits against them.

Foreign attachment. From the disclosure of the trustees it appeared that Silsby, the principal debtor, on the 29th of September, 1838, made an assignment of his property, and delivered to the trustees the property described in it, consisting among other things of goods, and notes and accounts. The deed of assignment was drawn to be executed by the creditors, and contained a clause by which they were to accept their several proportions in full discharge of their respective claims.

After the goods were placed in the hands of the assignees, and the assignment executed by them, several creditors, and among others the plaintiff, caused them to be summoned as the trustees of Silsby. The property remained in their possession, and they proceeded to manage and dispose of it, in the manner stated in the following extract from the disclosure, viz. : "We sold at public auction, after proper notice, much of said personal property, for which we took cash, or

notes running to us as assignees. We sold some of the personal property at private sale, for cash, or for good notes running also to us as assignees. We have not now on hand money collected from the sales sufficient to meet the necessary charges and expenses we have incurred; but we consider the notes received by us as well secured; and, as far as we can estimate the sales of all the personal property made by us, including the principal and interest up to this date, on the good and available notes received by us, the sales of said personal property amount on this day to the sum of $1177·56."

"We answer further, that after the property mentioned in said assignment came into our hands, we settled some of the book accounts, and received in money therefor the sum of $550·01, which money we put out on loan, and took securities therefor, running to us as assignees. We also settled other accounts, and received notes therefor, running to us as assignees. We also did the same with reference to the notes of said Silsby. We received the money for some, and took new notes running to us, for others."

The disclosure proceeded to state the account of the monies received and secured, with the charges of the trustees.

*Handerson*, for the plaintiff. The court having decided, at the last term, in the action Hurd against these trustees, that the assignment was invalid, and the assignees liable, we claim to charge them, 1. For the amount of the sales of personal property that came to their hands by the assignment. Thus far we suppose there can be no controversy.

2. They are no doubt liable for all the money received on the accounts in favor of the principal debtor, and on notes of his, deposited with the trustees. Most surely there can be no doubt of that.

3. As regards notes running to Silsby, where they have been taken up by the debtors, and new notes given running to the assignees, and where accounts have been settled by

notes running to the assignees, they are, as we suppose, equally liable. By taking these notes to themselves, the old accounts and notes are discharged; and as regards Silsby these assignees would hold the amount to his use; and the trustee suits having intervened before they paid over to Silsby, they hold the amount for the use of those creditors of Silsby who have brought the trustee suits.

As regards any notes running to Silsby, which the trustees have not collected, nor discharged them by new notes to themselves, and so of accounts in favor of Silsby, not settled by the trustees, either by note or cash, it is equally clear, we suppose, that the trustees are not liable. These remain *choses in action*, debts due Silsby, and cannot be reached by these suits.

We suppose the trustees are entitled out of this fund to a reasonable compensation for their services. But we object to two per cent. charged for collecting and paying over; also to a charge for "counsel fees." The law allows no such charges to trustees. Their fees are prescribed by statute.

The course, we suppose, is, to ascertain the amount for which the trustees are chargeable; from that deduct what is properly chargeable upon this general fund. The actions are then taken in their order, and in each action the trustees are to be allowed their taxable cost; and we thus proceed until the fund is exhausted. When that is done, in the remaining suits the trustees recover their cost, in each suit, of the plaintiffs.

*Hubbard*, for the trustees.

Parker, C. J.* The assignment being invalid against creditors, and the assignees having been summoned as trustees of the principal debtor while the goods received under it remained in their hands, it was their duty to hold those goods

---

* Gilchrist, J., having been of counsel did not sit.

until the determination of the action ; and upon the issuing of the execution against them as trustees it would have been their duty to deliver them over, that they might be sold and the avails applied in satisfaction of the debt. They have not done this, but have sold them, and cannot now perform that duty. They are, therefore, chargeable with the value. And they cannot complain if the value is taken to be the amount of sales, unless a greater sum was obtained by selling on credit. If there was, it is for them to show it. If they could show this distinctly, it might avail to reduce the amount ; and so it might be shown that the sale was for less than the value.

Having sold the goods without authority of law, and being answerable for the value, the credits were given at their risk.

The trustees are answerable also for the money received on the notes and accounts. The fact that they have loaned this money, or a part of it, cannot operate to exonerate them. 9 *Pick. R.* 435, *Hooper* vs. *Hills & Trustee.* And they must be held chargeable for such interest as they may have received or secured on the sales of the goods, or upon money loaned. The fund being held in trust, they are not entitled to make a profit upon it to themselves.

By the mere change of the security, taking notes to themselves for debts previously due, they cannot be held as trustees, unless, by thus taking the notes to themselves, they have made the debts their own. 5 *N. H. Rep.* 502, *Stone* vs. *Dean & Trustee;* 8 *Pick. R.* 298, *Lupton* vs. *Cutter & Trustee ;* 12 *Pick. R.* 22, *Tucker* vs. *Clisby & Trustee.* We think that is not necessarily the effect of such a change of the security. 4 *Greenl. R.* 47, *Rundlet* vs. *Jordan & Trustee ;* 11 *Pick. R.* 101, *Guild* vs. *Holbrook & Trustee.*

The trustees are of course to be allowed for necessary services and expenses, in taking care of the property which is in their hands. They may perhaps have no strictly legal claim for services in selling the goods ; but if it is made to appear, affirmatively, that the sale was advantageous, it will

be but equitable that they should receive a compensation for what has been in fact a benefit to the creditors. They would have been entitled to be allowed for custody and storage had they retained the goods.

They must be allowed a reasonable compensation for the care and custody of money received. It is immaterial whether this is called "commissions," or compensation for their services in collecting and paying over the money. 11 *Pick.* 101.

They cannot be allowed for "counsel fees" in the suits against them as trustees. For the fees and expenses in these suits, the costs must be deemed a satisfaction. 8 *Pick. R.* 260, *Adams* vs. *Cordis, Trustee of Williams.* If they had taken counsel respecting the trust under the assignment, before the trustee suits were commenced, under such circumstances that the amount paid would have been a proper charge against the fund, in case the assignment had been good, it might perhaps have been allowed. 11 *Pick. R.* 101; 8 *N. H. Rep.* 453.

*Trustees charged.*