SWAMSCOT MACHINE COMPANY *v.* PARTRIDGE *& a. &*
TRUSTEES.

25  369
69  396
25  369
74  294

Where a loss has been sustained by fire by the assured, and the amount of the loss has been ascertained, and a vote has been passed by the agents of the insurance company to pay it, it thereby assumes the character of a debt due from the insurance company to the assured, which may be attached in the hands of the company by the trustee process.

Notwithstanding there has been a total loss by fire, of the property insured by a mutual fire insurance company, the assured will be liable for the payment of all assessments made upon the premium note, for his just proportion of all losses sustained by the company during the entire period mentioned in the policy of insurance, as well after as before the loss occurred.

A trustee is entitled to retain, out of the amount in which he may be found indebted to the principal defendant, all sums which he is entitled to receive at the hands of the principal defendant, at the date of the disclosure, upon claims or contracts existing prior to the date of the action in which he is sought to be charged.

A trustee will be allowed to retain, or to set-off against the debt which he may owe the principal debtor, any demand which he might set-off, or of which he might avail himself by any of the modes allowed either by the common or statute law, if the action were brought by the principal defendant himself, or if the proceedings were wholly between the trustee and principal defendant.

An insurance company, summoned as the trustee of the assured, is entitled to retain, out of the sum of their indebtedness to the assured, the amount of all such sums as may have been properly assessed upon the premium note of the principal debtor, as his just proportion of the losses sustained by the company at any time prior to the time of the disclosure.

A trustee is entitled, by virtue of the statute, to retain, out of the sum of his indebtedness to the principal defendant, a sum equal to the amount of his reasonable costs incurred by him in the trustee proceedings, and execution will be issued against him for the balance only.

Proof of usage or custom is admissible to ascertain the nature and extent of a contract, in the absence of express stipulations.

So where the language of a contract is equivocal, or is susceptible of more than one meaning or construction, or has various senses, usage or custom may be resorted to, to show what was the real intention of the parties.

But it is no part of the legitimate purpose of such proof to vary or control the plain meaning and intention of the contract, as shown by the language of it, where the language has a plain, unmistakable and unequivocal meaning.

Accordingly, where an insurance company promised the assured that their directors " shall settle and pay (to him) all losses within three months after notice shall have been given as aforesaid," " and that the payment of the loss ascer-

tained shall be made within the time prescribed by the charter, without deduction from the sum decreed by the adjustment," it was holden that proof of a custom or usage on the part of the company, in case of a total loss, to retain, of the amount of the ascertained loss, two per cent. per month on the balance of the premium note, from the date of the last assessment upon it, until the expiration of the term of the policy, was inadmissible—the effect being to limit and control the clear and unequivocal terms of an express contract.

In an action brought by the assured to recover a loss by fire, the assured is entitled to interest, by way of damages, for the wrongful detention of the amount due him, beyond the time prescribed by the provisions of the policy, as affected by the charter and by-laws, for its payment.

In the case of an action against a trustee who is indebted to the principal debtor, where the indebtedness is of such a character that interest is recoverable, if at all, only upon the ground of a wrongful detention of the principal sum, interest is not ordinarily recoverable after the service of the process, the trustee being restrained thereby from payment until the determination of the action.

FOREIGN ATTACHMENT. The questions which arose in this case grew out of the disclosure of the trustees. It appeared that Partridge & Rude were insured in the New England Mutual Fire Insurance Company, on the 7th day of September, A. D. 1849, for $600, and that the property insured was destroyed by fire on the 19th day of September, 1849. On the 14th day of December, A. D. 1849, the following vote was passed by the directors of said insurance company: " Voted to allow Partridge & Rude the sum of $600, in full of their loss on policy No. 6433, as soon as the same can be collected by a new assessment."

The insurance company held a note against said Partridge & Rude, bearing date September 7, 1849, for $180, which note was in the following words :

" For value received in policy No. 6433, dated the 7th day of September, 1849, issued by the New England Mutual Fire Insurance Company, I promise to pay said company, or their treasurer for the time being, the sum of one hundred and eighty dollars, in such portions and at such

Swamscot Machine Co. *v.* Partridge.

times as the directors of said company may, agreeably to their act of incorporation and by-laws, require.

(Signed) PARTRIDGE & RUDE."

Three assessments had been ordered upon said deposit note; one of $26,46, May 15, 1850; one of $28,80, April 1, 1851; and one of $36,26, Feb. 2, 1852. The policy was made to expire on the 7th of September, 1852, and the company claimed the right to deduct, as they alleged is their custom to do, two per cent. per month upon said deposit note, from the present time to the expiration of said policy, amounting to $18—all of which sums, making $109,52, said insurance company claimed to deduct from said sum of $600, voted as aforesaid. They also claimed their costs, which the parties agreed to be $45,30.

The plaintiffs denied the right of the said insurance company to make any assessment against them after the property insured was destroyed. They also denied the right of the insurance company to diminish the sum of $600, voted them as aforesaid. The plaintiffs also claimed that the insurance company were chargeable with interest on said $600. Said policy, and the charter and by-laws of said insurance company, are referred to in the opinion, and their provisions there stated, so far as they are material to be understood.

*Hatch*, for the plaintiffs.

I. The liability of the assured in this case closed with the loss of the property insured. They were no longer liable for future assessments for future losses. A party who has become insured may withdraw from the company.

II. The loss here has been liquidated and settled by the vote of the company to pay $600. By sec. 13 of the by-laws of the company, payment of the sum ascertained as the amount of the loss, and voted to be paid, should be paid according to the provisions of the policy as affected by the

charter and by-laws, without such deductions as are claimed in this case. Payment is to be made of the sum ascertained, without any deduction.

III. We claim that the trustees are chargeable with interest after three months from the date of the notice of the loss.

*Wells*, for the trustees.

We make no claim on the part of the trustees for any deduction from the amount voted. What we claim is a set-off of the sums justly and legally due to the insurance company from Partridge & Rude. Nor is this a new or unusual one. In that way we are entitled to receive the sums assessed upon the deposit note and the taxable costs. We are also entitled to be allowed, according to the established usage, the per centage claimed upon the balance of the deposit note to the time of the expiration of the term of the policy.

WOODS, J. That the trustees are chargable in this case, admits of no doubt. It is not even denied by themselves. A loss having been suffered by Partridge & Rude by fire, and the amount of damages having been ascertained and voted to be paid by the corporation, the same have assumed the character of a debt due from the insurance company to the assured, which may well be attached by the trustee process. Partridge & Rude, according to that state of facts, are the acknowledged creditors of the trustees for an ascertained and liquidated sum. It is no longer a mere claim for an indemnity for the loss sustained and something sounding in damages, but has become a liquidated debt.

But the defendants, by way of set-off to the sum in their hands found due to the defendant, claim to be allowed sundry sums, and among them the amount of three assessments made by their directors upon the premium note given by the principal defendant to the trustees as the consideration

for the policy, to meet certain losses which had occurred during the period of time expressed in the policy, but since the loss happened for which the damages were claimed by the defendant and allowed by the corporation. That the assured is liable for assessments ordered in such a case, was decided in this court in the case of the *N. H. Mutual Fire Ins. Co.* v. *Rand & Cummings*, 4 Foster's Rep. 428.

In that case there was an admitted total loss of the property insured, and yet the court decided that the defendants were liable for the payment of assessments made upon their premium note for their just proportion of all losses sustained by the corporation during the entire period mentioned in their policy of insurance.

The reasons and grounds of the decision were then fully stated, and need not be repeated. It is sufficient to say that that decision, we think, was in conformity with the plain provisions of the charter, and is not in conflict with the justice of the case, and we see no reason to question its correctness; and besides, we think the cases in other jurisdictions uniformly and fully sustain the opinion. *Horne* v. *Boyd*, 1 Sandf. Sup. Ct. Rep. 481; *Smith* v. *Saratoga Co. Mutual Fire Ins. Co.*, 3 Hill. 508; *Neely* v. *Onondaga Co. Mutual Fire Ins. Co.*, 7 Hill 49.

That trustees may retain any sums which they are entitled to receive at the hands of the principal defendant, at the date of the disclosure, upon claims or contracts existing prior to the action, cannot admit of doubt. It is too well settled to be further questioned, that they may be allowed to retain, of the funds found in their hands, an amount equal to all sums which might be properly claimed by way of set-off if the action were brought by the principal defendant to recover the amount of his claim against the trustees. The rights and liabilities of trustees are not changed to their prejudice by the fact that the action is commenced by the creditor of the principal defendant and not by the principal defendant himself. The only object and legitimate

effect of the trustee process is to enable the creditor to secure and apply to the discharge of his claim against the principal defendant, such sums of money as may be found to be legally or equitably due from the trustee to the principal defendant, or such other credits or goods of the defendant as may be found in his possession beyond what may be due from the principal to the trustee. In fact, a trustee is entitled to retain or to set-off against the debt which he may owe the principal, any demand which he might setoff, or of which he might avail himself by any of the modes allowed either by the common or statute law if the action were brought by the defendant himself, or if the proceedings were wholly between the trustee and principal defendant. *Lamb* v. *Stone*, 11 Pick. 527, 533; *Hathaway* v. *Russell*, 16 Mass. Rep. 473; *Boston Type Foundry* v. *Mortimer*, 7 Pick. 166; *Smith* v. *Stearns*, 19 Pick. 20; *Boardman* v. *Cushing*, 12 N. H. Rep. 105.

And where, in order to protect his rights, it was necessary for the trustee to bring a cross action and take judgment against the principal defendant, the court in Massachusetts granted a continuance to enable the trustee to obtain a set-off of judgments and executions. *Boston Type Foundry* v. *Mortimer*, 7 Pick. 166, before cited.

No doubt then exists that in the present case the trustees have a right to retain of the funds found in their hands, sufficient to meet the amount of the several assessments made upon the deposit note. That amount was an ascertained debt, as we have seen, justly due from the principal to the trustees at the date of the disclosure, by virtue of a prior contract.

It is every day's practice, in accordance with express statutory provisions to that effect, to allow trustees to retain the amount of their reasonable costs incurred in the trustee proceedings, and to issue execution only for the balance found in their hands. The trustees' claim, then, to be al-

lowed their costs out of the money in their hands, must be sustained.

An objection is taken to the allowance of the sums claimed by the trustees, based upon the idea that the defendants have set up the right to deduct from or diminish the amount voted to be paid to the defendant, in violation of the 13th article of the by-laws of the corporation, and that such is the effect of allowing them the set-off claimed in the case.

But we think there is no sufficient foundation for the objection, so far as the same relates to the assessments upon the deposit note. They ask only to retain so much of the sum ascertained and voted to be paid as the loss of the principal defendant, as shall equal the amount that may be found legally due to them from said defendant, to be applied by way of set-off in payment thereof to that extent. It is strictly a claim of the right of set-off, and nothing more. Their right to retain for their reasonable costs rests upon the express provisions of the statute relating to the trustee process, not by way of diminishing the sum to be paid by the trustee, but in discharge of a legal claim of the trustee to be paid out of funds of the principal in his hands. This claim of the trustees, then, is not in any legal sense a claim for a reduction or diminution of the sum of the loss below the sum ascertained and voted, but a claim of right of payment or cancellation of it, to the extent of the indebtedness of the defendant to the trustees, and of their just costs, by way of set-off, or by retaining that amount of the loss found for that purpose. Clearly there is no objection to this claim, either in equity or in law.

But the trustees claim the right to retain also a further sum of $18,00, being two per cent. per month from the date of the last assessment upon the premium note, upon the balance thereof over the former assessments until the expiration of the term of the policy. This claim is rested by them entirely upon the ground of an alleged usage of the company, in all cases of a total loss, such as the present

was found to be. It is not pretended that this right exists by the terms of the policy, or by the provisions of the charter or by-laws of the corporation, which are referred to in the policy as forming a part of it, and governing the rights of the parties thereto.

The corporation, by the policy, promised the defendant, " according to the provisions of said act and by-laws of the corporation, to pay and satisfy him and his heirs, &c., the sum of six hundred dollars within three months next after the said property shall be burnt, destroyed, or demolished by fire, due notice thereof given as aforesaid."

The 8th section of the charter provides that " the directors shall settle and pay all losses within three months after notice shall have been given as aforesaid." Article 13 of the by-laws provides that " payment of the loss ascertained shall be made within the time prescribed by the charter, without deduction from the sum decreed by the adjustment."

The contract, then, on the part of the corporation, was an agreement to pay the full amount of the loss by fire, within three months after notice thereof; and no right is reserved to retain the amount of the per centage upon the deposit note, claimed in this case, or any other sum.

If the usage, then, can be allowed to have the effect claimed for it, it must have it in despite of the express terms of the contract that the entire sum of the loss sustained " and decreed by the adjustment " shall be paid to the assured within the time prescribed in the policy.

The question then is, whether a usage can prevail which is repugnant to the express contract of the parties, and wholly inconsistent with and in contravention of the provisions and terms thereof.

Upon this precise point the authorities are entirely clear and conclusive. Mr. Greenleaf, in his treatise upon the law of evidence, (1 Greenl. Ev. 336) states the doctrine thus:

" Though usage may be admissible to explain what is doubtful, it is not admissible to contradict what is plain."

Where a policy was drawn in the usual form upon a ship, her tackle, apparel, boats, &c., evidence of usage that underwriters never pay for the loss of boats slung upon the quarter outside of the ship, was held inadmissible. *Blackett* v. *The Royal Exchange Assurance Co.*, 2 Crompton & Jervis 244.

The doctrine upon the subject under consideration is most distinctly and forcibly stated by Mr. Justice Story in an able judgment delivered in the case of the *Schooner Reeside*, 2 Sumner's Rep. 567. " The true and appropriate office of a usage or custom," says he, " is to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations but from mere implications and presumptions and acts of a doubtful or equivocal character. It may also be admitted to ascertain the true meaning of a particular word or of particular words in a given instrument, when the word or words have various senses, some common, some qualified, and some technical, according to the subject matter to which they are applied. But I apprehend that it can never be proper to resort to any usage, or custom, to control or vary the positive stipulations in a written contract, and *a fortiori* not in order to contradict them. An express contract of the parties is always admissible to supersede or vary or control a usage or custom ; for the latter may always be waived at the will of the parties. But a written and express contract cannot be controlled or varied or contradicted by a usage or custom, for that would not only be to admit parol evidence to control, vary or contradict written contracts, but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary or contradict the most formal and deliberate written declarations of the parties."

24

The case of *Aguilar* v. *Rodgers*, 7 D. & E. 421, was an action of assumpsit to recover a return premium upon a policy of insurance. The defendant undertook to return £10 per cent. of the premium "if the ship sailed with convoy and arrived." Lord *Kenyon* remarks thus in delivering the opinion of the court: " The words here are not equivocal, and we ought not to depart from them ; it would be attended with great mischief and inconvenience if in construing contracts of this kind we were not to decide according to the words used by the contracting parties."

In *Leavitt* v. *Simes*, 3 N. H. Rep. 14, Mr. Chief Justice Richardson remarks, " it will deserve very serious consideration whether the admission of testimony to show the usage and his assent to it, is not to admit parol evidence to vary the terms of a written contract." Upon the authorities, the object and extent of the rule letting in evidence of usage or custom to aid in construing a contract, are plain and obvious. It is to ascertain the nature and extent of the contract in the absence of express stipulations. It is no part of the legitimate purpose of such proof to vary or control the plain meaning and intention of the parties, as shown by the language used, when that language has a plain and unmistakable meaning. But when the language used is equivocal, or is susceptible of more than one construction or meaning, proof of usage may be resorted to to show what was the real intention of the parties. 2 Sumner's Rep. 569, before referred to ; *Cutter* v. *Powell*, 6 Tenn. Rep. 320 ; *Vallance* v. *Dewer*, 1 Camp. 503 ; *Noble* v. *Kennoway*, 2 Doug. 510.

The doctrine as above stated, when applied to the present case, is decisive of it. By the express terms of the contract, the corporation were bound to pay to the, assured $600, the ascertained amount of the loss sustained, without any deduction. If effect were given to the usage claimed, then the sum otherwise to be paid would be limited and diminished by the amount of $18.

The object and effect, then, of the proof offered of the usage in the case, were plainly to vary and limit the plain and unequivocal terms of the policy, and to control and limit their construction and legal effect. To give the evidence of the usage the effect claimed for it, would be to allow the exact converse of the true and well settled rule of law upon this subject to prevail. It would be to hold that while the contract in express and unmistakable terms provides that the whole loss shall be ascertained and paid to the assured, the usage shall control the express terms, and give them the effect of a contract for the payment of a sum less than the whole loss sustained. It would be to allow the usage to control an express written contract, and to limit its terms and effect, while it is well settled, in accordance with sound reason too, that a usage shall be regarded as waived by the express terms of a contract, when they are in conflict with each other.

We find no principle or authority upon which the claim made for the deduction, upon the ground of usage, can be sustained, and we are therefore of the opinion that it cannot be allowed.

The plaintiff claims that the trustees are chargable with interest upon the sum found due to the principal defendant and voted to be paid him. Here was no express contract to pay interest.

The amount of loss was ascertained and voted to be paid as soon as it could be done by a new assessment. This ascertainment and vote took place December 14, 1849.

The charter and by-laws provided for the settlement and payment of losses within three months after notice, when there is an acquiescence on the part of the assured in the sum of loss ascertained by the directors. Here the whole amount insured was allowed, and so an acquiescence may well be inferred. More than three months have elapsed since the ascertainment of the loss and vote to pay the amount of it, which may well be taken to be the date of

the notice, in the absence of other proof.    If this action were one brought by the assured, he would doubtless be entitled to interest by way of damages for the wrongful detention of the amount due him, beyond the time prescribed by the provisions of the policy, as affected by the charter and by-laws, for its payment.   *Barnard* v. *Bartholomew,* 22 Pick. 291 ; *Dodge* v. *Perkins,* 9 Pick. 368 ; *Cole* v. *Trull,* do. 325 ; *Walker* v. *Bradley,* 3 Pick. 261 ; *McIlvaine* v. *Wilkins,* 12 N. H. Rep. 474 ; *Judge of Probate* v. *Heydock,* 8 N. H. Rep. 491 ; *Pierce* v. *Howe,* 1 do. 179.

But in the case of an action against a trustee who is indebted to the principal debtor, where the indebtedness is of such a character that interest can only be recovered upon the ground of a wrongful detention of the principal sum by the debtor, interest is not ordinarily recoverable after the service of the process, for the plain reason that by the service the trustee is ordinarily restrained from paying until the determination of the trustee action.   *Prescott* v. *Parker,* 4 Mass. Rep. 170 ; *Adams* v. *Cordis,* 8 Pick. 260.

It does not appear by the case when the present action was commenced, and of course it does not appear that the payment of the money was wrongfully omitted for any period prior to the commencement of it, and consequently no interest can be allowed upon that ground.   Neither does it appear by the disclosure that any funds have been in the hands of the trustees under such circumstances as to enable the court to infer that the same have earned interest.   *Brown* v. *Silsby,* 10 N. H. Rep. 521.   Nor can the court say that the corporation ought to have placed the funds intended for this purpose in a situation to have earned interest.   *Pierce* v. *Howe,* before cited.   The corporation is not a corporation whose business it is to employ their funds in trade and business, and we do not see how, upon the facts disclosed, the court can see or determine that the corporation has not in this respect done their whole duty if they shall have the

funds ready, upon the determination of this case, to pay such judgment as shall be rendered against them.

We are of the opinion, therefore, that the trustees are not chargable with interest in this case.

In accordance with the principles of the foregoing opinion, let there be

*Judgment for the plaintiff.*