Grafton
No. 88-231

XENIA K. HEATON AND DONALD W. STONE

v.

BOULDERS PROPERTIES, INC. AND ENRIQUE DARER

November 13, 1989

*Baker & Hayes,* of Lebanon (*William A. Baker* and *C. Nicholas Burke* on the brief, and *Mr. Burke* orally), for the plaintiffs.

*Brownell & Moeser P.C.,* of Norwich, Vermont (*Douglas S. Moore* on the brief and orally), for the defendants.

BATCHELDER, J. This case involves a dispute over the payment of a real estate broker's commission resulting from the sale of property pursuant to a non-exclusive listing contract. The defendants, Enrique Darer and Boulders Properties, Inc., appeal from the Superior Court's (*Murphy,* J.) order approving a Master's (*Louie C. Elliott,* Esq.) recommended denial of their summary judgment motion, as well as appealing from the Superior Court's (*O'Neil,* J.) decision in a later trial that the plaintiffs, Xenia Heaton and Donald Stone, were the procuring cause of the sale of the property described in the listing contract. The plaintiffs appeal the amount of the verdict, as well as the dismissal of the action against Darer, granted after trial. We reverse the denial of the defendants' summary judgment motion and in so doing moot the other issues presented.

Enrique Darer purchased an option to buy certain property in Lebanon from one John Piane, in July 1983. Two months later, on September 1, 1983, Darer entered into a non-exclusive real estate listing agreement for the Lebanon property option with Xenia

Heaton, a licensed realtor. Darer did not yet have title; he had not exercised the option, and never did, but was in effect listing, with the realtor, his right to buy the land. The listing agreement specified that the property was to be sold together with all the necessary State and city approvals for a proposed 132-unit apartment complex, and that a 10% real estate broker's commission would be paid to the first broker consummating the sale. Later in September, Darer and others formed Boulders Properties, Inc. to acquire and develop the Lebanon property described in Darer's option. Darer testified that he transferred his interest in the Lebanon property to Boulders Properties, Inc. when it was formed in September. In conjunction with Heaton, Donald Stone, a licensed real estate broker who had a "co-broker" agreement with Heaton, produced Paul Mack as a potential purchaser, in September. On October 13, Boulders Properties,.Inc. entered into a purchase and sale agreement with Mack whereunder Mack agreed to purchase a substantial portion of the property in question, roughly 13 of the total 17 acres. The October purchase and sale agreement specified a May 1, 1984 closing date. Despite a subsequent agreement to extend the closing date and several attempts in May to consummate the sale, the October purchase and sale agreement expired, unconsummated, on May 25, 1984.

The non-exclusive listing agreement which Darer had entered into with Heaton on September 1, 1983, provided that:

> "The Owner (Seller) *Reserves* the Right To Terminate This Contract or Agreement At Any Time Upon Notice In Writing To Broker . . . .

> I further agree to pay a commission if a sale, exchange, lease *for a period of more than 12 months,* or other transfer of said property is made within SIX (6) months after the termination of this authorization to persons with whom Broker shall have negotiated during the term hereof and whose names the Broker shall have submitted in writing by ·certified mail to Owner within TEN DAYS after termination of this authorization."

Darer cancelled the listing agreement with the following letter, dated May 28, 1984, addressed to William D'Antonio of Heaton Real Estate, and which Darer signed as Vice President of Boulders Properties, Inc.:

> "This is to advise you that I would like to cancel the Open Listing Agreement entered into by ourselves on September 1, 1983.

I would like to give you an open listing for the entire subdivision for a price of $500,000 and one for the PUD land for $3,000 a unit of (sic) 396,000.

Looking forward to hearing from you."

Neither Heaton, Stone, nor D'Antonio complied with the listing contract's notice requirement. Notification of persons with whom the plaintiffs had negotiated was not given to Darer or to Boulders Properties, Inc. within the ten days after the listing contract was terminated, nor was it given at any other time.

Throughout the summer of 1984, Darer continued negotiations with Mack and others for the financing, government approvals and land sale necessary for, and in anticipation of, the 132-unit apartment complex development. On August 31, 1984, the Boulders Partnership, a different entity than Boulders Properties, Inc., consisting of Mack, his wife and a Mr. and Mrs. Carbee as partners, purchased a large portion of the Lebanon property. Around the first of September, 1984, Stone learned of the completed land deal during a telephone conversation with Mack.

The original purchase and sale agreement between Mack and Boulders Properties, Inc. called for a purchase price of $297,000. The actual consideration paid at the closing was $380,000. The discrepancy in price is difficult to reconcile, although the parties have attempted to do so in various ways. Mack and Carbee requested and received from Boulders Properties, Inc., or Darer, the sum of $80,000 at the closing. Such sum was identified by Darer as a commission, although it is unclear for what this commission was paid, other than for buying the property, and by Mack as a reimbursement for deposits and expenditures which Mack had allegedly made in connection with engineering and site work on the property prior to the closing on August 31, 1984. Mack testified that he intentionally inflated the purchase price of the Boulders property in order to increase the amount of the refinancing loan which he would be able to obtain from a bank. After learning of the completed deal and that the defendants did not anticipate paying them a commission, the plaintiffs filed suit under the listing contract claiming their entitlement to a commission.

The defendants moved for summary judgment below, on the basis that the plaintiffs had not complied with the notice requirement of the listing contract. The superior court approved the master's recommendation denying the defendants summary judgment. The master found that as a matter of law the defendants' actual notice of the broker's negotiation with a potential buyer took the place of the written notice required by the explicit terms of the contract.

Subsequent to the court's ruling the plaintiffs moved for partial summary judgment, arguing that because, as the defendants knew, they had negotiated during the term of the listing agreement with Mack, a member of the partnership which ultimately purchased a portion of the property, and because actual notice controlled the parties' dealings under the court's ruling, they were entitled to a 10% commission as a matter of law. The defendants filed a cross-motion for summary judgment, supported by Darer's affidavit, again arguing that the plaintiffs had failed to comply with the express written provisions of the contract. The Superior Court (*Morrill*, J.) denied both of these summary judgment motions on the ground that the defendants had already moved unsuccessfully for summary judgment on the issue of sufficient notice under the contract and thus could not have another shot at it. Also, the court found that genuine issues of material fact existed as to whether the plaintiffs were the procuring cause of the sale and whether they could recover a commission under the contract for the sale of only a portion of the land. After trial on the issues as to who procured the sale, whether the plaintiffs were entitled to a commission under the contract for a sale of only a large portion of the land and what the sale price actually was, the Superior Court (*O'Neil*, J.) rendered a verdict of $29,700 plus costs and interest in favor of the plaintiffs. The court dismissed the action against Darer and Mack and found the sale price, upon which the commission was to be calculated, to be $297,000. We reverse on the limited ground that the defendants' original summary judgment motion should have been granted.

Defendants argue on appeal that the denial of their original motion for summary judgment was erroneous as a matter of law. The defendants base this argument on two contentions: (1) the master improperly found facts in the summary judgment hearing; and (2) the master's conclusion of law was clearly erroneous. The defendants also contend on appeal that the trial court erred in concluding that the plaintiffs were the procuring cause of the sale. The plaintiffs assert in their cross-appeal that the trial court erred in finding that the sale price of the real estate was $297,000, rather than $380,000 and that, consequently, they are entitled to a commission of $38,000. The plaintiffs also cross-appeal on the trial court's dismissal of the action against Darer, arguing that the dismissal was erroneous as a matter of law. Because we find that the trial court improperly denied the defendants' original motion for summary judgment, we need not reach the other issues.

At the outset we reject the defendants' first contention that the master made factual findings at the initial summary judgment hearing. The master recommended that "[s]ince the defendants had actual notice of plaintiffs' negotiations with Paul Mack, during the term of the non-exclusive agreement, it is not important that plaintiffs failed to comply with the technical requirement contained in the non-exclusive agreement." The defendants present a confusing argument. It is unclear whether they are asserting that the master made a finding that they had actual notice and that this finding was erroneously made, or whether they are arguing that the master's conclusion that actual notice is sufficient notice was a factual finding. If the defendants question whether they had actual notice or not, the answer clearly is that the issue of actual notice was never contested and, therefore, the defendants cannot seriously argue that the master made factual findings on this issue. If they question whether the master's recommendation is a finding of fact or a ruling of law, the answer clearly is that the recommendation is a ruling of law.

■ As for the master's ruling that actual knowledge, rather than the terms of the contract, controlled the dealings, this ruling is a conclusion of law and not of fact. *See Centronics Data Computer Corp. v. Salzman*, 129 N.H. 692, 696, 531 A.2d 348, 350 (1987) (citing *Restaurant Operators, Inc. v. Jenney*, 128 N.H. 708, 710, 519 A.2d 256, 258 (1986)).

■ We agree with the defendants, however, that this conclusion of law was erroneous. Pursuant to RSA 491:8-a, the trial court must grant summary judgment when it finds no genuine issue of material fact, after considering the affidavits and other evidence presented in a light most favorable to the non-moving party, *ERA Pat Demarais Assoc's v. Alex. Eastman Found.*, 129 N.H. 89, 92, 523 A.2d 74, 76 (1986) (citing *McElroy v. Gaffney*, 123 N.H. 58, 60, 457 A.2d 429, 430 (1983)), and when the moving party is entitled to judgment as a matter of law, *ERA Pat Demarais, supra* at 92, 523 A.2d at 76 (citing *Arsenault v. Willis*, 117 N.H. 980, 983, 380 A.2d 264, 266 (1977)). Here there are no contested material facts, and as a matter of law the defendants are entitled to judgment.

The master relied, erroneously, on *Town of Newport v. State*, 115 N.H. 506, 345 A.2d 402 (1975) and *Dupuis v. Smith Properties, Inc.*, 114 N.H. 625, 312 A.2d 695 (1974), to support his recommendation that the defendants' actual notice of the plaintiffs' negotiations with Mack made the listing contract's notice requirement merely "technical." We held in *Newport* that actual notice cures technical

defects in the mode of transmission required by statute for mailed notice of tax appeals, since the purposes of the statute, namely to assure delivery of notice and to aid in dispute resolution as to whether notice was received, are satisfied by actual notice. In *Dupuis* we held that substitution of a defendant after the expiration of the statute of limitations was proper since the substituted corporate defendant had actual notice of the action against it prior to the expiration of the statutory period and was, therefore, not prejudiced by the substitution. *Newport* and *Dupuis* do not govern the contractual notice issue before us, however.

A court may ignore an express contractual provision only when it concludes that a different interpretation of the contract would more accurately reflect the actual intent of the parties at the time the contract was made. *Thiem v. Thomas*, 119 N.H. 598, 603, 406 A.2d 115, 118 (1979) (citing *Spear v. Penna*, 92 N.H. 190, 27 A.2d 92 (1942)); *see also Centronics Data*, 129 N.H. at 696, 531 A.2d at 350 (quoting *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984)); *Gosselin v. Archibald*, 121 N.H. 1016, 1020, 437 A.2d 302, 306 (1981); *Summit Electric, Inc. v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981). Here, the plaintiffs presented no evidence that the parties intended actual notice to control over the express contractual provision requiring that notice of persons with whom the plaintiffs have negotiated during the term of the listing be given in writing by certified mail within ten days after termination of the agreement.

Heaton testified that she sometimes sends the notice required by her listing contracts and sometimes does not. This testimony sheds no light, however, on her intent in regard to the notice provision of this contract, nor on the intent of the defendants, at the time the parties contracted.

In addition, the plaintiffs presented the affidavit of Roger Clarkson, a real estate broker licensed in New Hampshire, who stated that it is customary in the real estate profession that, in the event an open listing agreement is terminated and in the event that a real estate broker has previously presented the name of a prospective buyer to the seller in the form of a purchase and sale contract, it is not necessary to present the name of the prospective purchaser again, if in fact the contract is not consummated. Again, this evidence of custom and usage has no bearing on the intent of the parties here at the time they entered into the contract. Moreover, custom and usage cannot be used to vary the express

terms of a contract. *Swamscot Machine Co. v. Partridge*, 25 N.H. 369, 377 (1852); *Wheeler v. Nurse*, 20 N.H. 220, 221 (1849).

Absent evidence that the parties intended otherwise, at the time of contracting, the express notice provision controls. Because the plaintiffs did not abide by the contract's terms, as a matter of law the defendants are entitled to summary judgment.

*Reversed.*

All concurred.