Merrimack
No. 91-283

RITA C. AND JEAN P. ST–LAURENT

v.

FIERMONTI OLDSMOBILE, INC. & a.

July 30, 1992

*Perkins, Phillips & Waters P.A.*, of Concord (*Timothy P. Gurshin* on the brief and orally), for the plaintiffs.

*Jordan & Gfroerer*, of Concord (*David W. Jordan* on the brief and orally), for the defendants.

BATCHELDER, J.  The plaintiffs brought suit under RSA 382-A: 2-608, which provides for revocation of acceptance of goods, and obtained a jury verdict for $12,985, the difference between the purchase prices of a defective and replacement car. The Superior Court (*Mangones*, J.) ordered judgment notwithstanding the verdict on the grounds that the plaintiffs did not prove that a nonconformity in the product existed at the time of purchase. We reverse.

In January 1983, the plaintiffs, Rita and Jean St-Laurent, bought a 1982 Oldsmobile Toranado from defendant Fiermonti Oldsmobile, of Concord. The car had been used by Fiermonti as a demonstrator, had about 5,800 miles on its odometer, and cost the plaintiffs $17,985.25. Aside from some minor problems, the plaintiffs were "very pleased" with the car until September 1984, when the car's automatic transmission would not shift properly. At that time, the

plaintiffs had owned the car for about 19 months and driven it about 19,000 miles.

The plaintiffs promptly brought the car to Fiermonti and left it for several days for repairs. The car worked well for almost two months but after less than 1,200 miles of driving the trouble reappeared in October 1984, and the plaintiffs again took the car to Fiermonti for repairs. Fiermonti kept the car for nearly seven weeks, completely overhauling the transmission and replacing its major components. Again in June 1985, after the plaintiffs had driven the car an additional 3,600 miles, the transmission began to malfunction, and the plaintiffs brought it back to Fiermonti, who kept it for 10 days.

Up to this point, Fiermonti had not billed the plaintiffs for the repairs to their car. However, when the plaintiffs picked it up after the third repair, Fiermonti's general manager indicated that the transmission could not be replaced because the manufacturer no longer made them. He also stated that Fiermonti could not assure the plaintiffs that the trouble would not recur, that Fiermonti would charge the plaintiffs for any future repairs, and that Fiermonti would be willing to offer $2,000 for the car as a trade-in toward another purchase.

The transmission malfunctioned as the plaintiffs drove home. They immediately returned the car to Fiermonti, who again adjusted the transmission. Within two weeks and after just 70 miles of driving, however, the transmission again stuck in gear and would not shift properly. For a fifth time, the plaintiffs brought the car to Fiermonti for repairs. At no time did anybody but Fiermonti's mechanics attempt to fix the car.

Having lost confidence that the problems could be repaired, the plaintiffs informed Fiermonti that they wanted to revoke their acceptance of the car. Fiermonti refused. Soon thereafter, the plaintiffs acquired a new car, receiving $5,000 as a trade-in for their Fiermonti Oldsmobile. The plaintiffs then sued Fiermonti for damages resulting from the sale of a defective car, under RSA 382-A:2-608, which provides for the revocation of acceptance of goods.

The plaintiffs' jury verdict of $12,985 was the difference between the purchase price of the car and the subsequent trade-in value, *Sanborn v. Aranosian*, 119 N.H. 969, 409 A.2d 1352 (1979). The court, however, granted judgment notwithstanding the verdict, which the plaintiffs appeal.

■■ A motion for judgment *non obstante veredicto*, or judgment notwithstanding the verdict, presents an issue only of law.

*Gowen v. Brothers*, 121 N.H. 377, 380, 430 A.2d 159, 161 (1981). The trial court cannot weigh the evidence or judge the credibility of witnesses, and it must construe the evidence and all reasonable inferences most favorably to the party opposing the motion. *Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977).

■■■ The motion must be denied if the evidence is conflicting, or if opposing inferences may be drawn from it. *Id.; Bryson v. Carroll*, 93 N.H. 287, 289, 41 A.2d 240, 241 (1945). The motion will be granted, on the other hand, "only when all of the evidence viewed most favorably to the opponent so overwhelmingly favors the moving party that no contrary verdict based upon that evidence could ever stand." *Amabello*, 117 N.H. at 561, 374 A.2d. at 1185; *see also Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 496, 389 A.2d 429, 431 (1978) (motion "granted only when the evidence and all reasonable inferences therefrom construed most favorably to the party opposing the motion would not enable a jury to find for that party").

■■ The substantive law in this case is derived from the Uniform Commercial Code. RSA 382-A:2-608 provides that:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

Thus, for the plaintiffs to be successful in their revocation of acceptance action, they must satisfy five conditions, which the court substantially stated in its instructions to the jury: (1) there must have been a nonconformity which substantially impaired the value of

the car to the plaintiffs; (2) revocation must have occurred within a reasonable time after they discovered the nonconformity; (3) revocation must have occurred before a substantial change occurred in the condition of the car not caused by its own defects; (4) there must have been due notice of revocation to Fiermonti; and (5) the plaintiffs must have accepted the item without having discovered the nonconformity and their acceptance must have been reasonably induced either by the difficulty of the discovery or by Fiermonti's assurances. *See* J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 8-4, at 416 (3d ed. 1988).

There is no dispute regarding the first four elements. As to the final element, however, the trial court found

> "fatal to the plaintiffs . . . the requirement that the buyer must show that his acceptance was reasonably induced by the difficulty of discovering the nonconformity before acceptance. Implicit in this . . . condition is a requirement that nonconformity must, in fact, have been in existence at the time of sale. Plaintiffs had to prove that there was a defect in the transmission at the time the vehicle was delivered to them on January 26, 1983. That they did not do. The overwhelming evidence indicates that the plaintiffs drove the vehicle apparently trouble-free for some nineteen months. The only direct evidence presented at trial on this issue was the expert testimony of [plaintiffs' expert]; his testimony, in relevant part, went as follows:
>
> > [Q]: Well, isn't it also *possible* that the thing was just not manufactured right in the first place?
> >
> > [A]: Yes, it is. (Emphasis added.)
>
> This is the only evidence presented at trial on the issue of whether the defect existed when the car was first delivered to the plaintiffs. The plaintiffs' expert did not testify that the transmission was in fact defective at the time of sale, or that it was even probable that it was. No direct and very little circumstantial evidence exists that the car contained a defective transmission at the time of sale. Upon review of this matter, the Court holds as a matter of law that plaintiffs did not produce evidence that it was more probable than not that the vehicle was defective at the time of purchase. As a result, the Court must find that the plaintiffs have failed to prove the requisite elements of their action.
>
> Defendant's motion for judgment notwithstanding the verdict is therefore granted."

The question for this court is whether the trial court properly granted a judgment notwithstanding the verdict. The court declared that the only evidence presented on the issue of the car's purported defect was that reproduced above. However, our review of the record reveals additional testimony on the same issue by the plaintiffs' expert. On direct examination, the following was asked and answered:

"Q: [A]ssuming that what is set forth in [the repair records] is true, that is, that this particular model of automobile, as described, with the mileage indicated, would the parts listed, would the repairs carried out listed, assuming all of that is true, do you have any opinion about whether the automobile or this transmission *was defective*?

A: I would say there definitely *was a problem* with the transmission."

(Emphasis added.) The witness went on to list specifically what in the repair records led him to this conclusion. He was then asked:

"Q: Does the information set forth [in an additional repair record], assuming it is true, strengthen, weaken or not change your position at all?

A: It doesn't change my opinion as far as there *was a problem* with the transmission."

(Emphasis added.)

■■ It is not absolutely clear from the above dialogues whether or not the expert regarded the car as defective at the time of purchase. We must, however, construe the ambiguity in favor of the plaintiff. The word "defective" means "wanting in something essential; falling below an accepted standard in regularity and soundness of form or structure," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 591 (unabridged ed. 1961), and implies a pre-existing flaw rather than a recently occurring fault, *see Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989) ("lack of something necessary for adequacy"); *Egan v. Washington General Insurance Corporation*, 240 So. 2d. 875, 877 (Fla. Dist. Ct. App. 1970) ("some structural weakness in the part or component"). The testimony, moreover, was phrased in the past tense, further allowing an inference of a defect at the time of purchase. Finally, the car was still fairly new, it had a serious problem that could not be fixed, and there was no suggestion of an accident, abuse, an attempt by other mechanics to fix the car, or any other contribution by plaintiffs to the

problem. *Cf. Welch v. Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. 358, 364, 430 A.2d 144, 148 (1981) ("It is not necessary that the plaintiffs establish the cause of the defect."). This leads us to conclude that "[t]he plaintiffs' evidence, if believed by the jury, was sufficient to support a verdict in their favor." *Amabello*, 117 N.H. at 561–62, 374 A.2d at 1185. Thus, we reverse the court's grant of judgment notwithstanding the verdict, and order that the jury's verdict be reinstated.

*Reversed.*

All concurred.