Grafton
No. 92-355

PHILIP G. PHILLIPS

v.

VERAX CORPORATION *& a.*

March 3, 1994

*Brooks, McNally, Whittington, Platto & Vitt*, of Hanover (*W.E. Whittington IV* and *Douglas S. Moore* on the brief, and *Mr. Whittington* orally), for the plaintiff.

*Sulloway & Hollis*, of Concord (*Edward M. Kaplan & a.* on the brief, and *Mr. Kaplan* orally), for the defendants.

THAYER, J. The defendants, Peter L. Christie, Robert C. Dean, Jr., and Verax Corporation, appeal a jury verdict in this contract and tort action arising out of their employment relationship with the plaintiff, Philip G. Phillips. The plaintiff cross-appeals the trial court's entry of judgment. We affirm.

Following a trial in the Superior Court (*Smith*, J.), the jury returned verdicts for the plaintiff totalling $534,600, which the trial

court subsequently entered at $200,000. The defendants appeal, alleging the following: (1) the trial court erred in denying defendant Verax Corporation's motion for summary judgment because (a) defendants Dean and Christie lacked authority to act on behalf of Verax Corporation, (b) the plaintiff presented no evidence that the parties actually had an employment agreement, and (c) the statute of frauds and a lack of detrimental reliance or consideration barred recovery on the alleged contract; (2) the court erred in denying the defendants' motion for judgment notwithstanding the verdict because the plaintiff did not rely to his detriment on the defendants' allegedly fraudulent misrepresentations and offered no proof of reliance damages; and (3) the court abused its discretion by barring the testimony of a defense witness unless he submitted to a discovery deposition twenty-four hours before testifying. The plaintiff cross-appeals the trial court's entry of judgment for $200,000, rather than for the $534,600 sum total of the jury's awards, arguing that each award was separate and supported by independent evidence.

The relevant facts are as follows. Defendant Verax Corporation (Verax) was formed in 1979 and, during the time span relevant to this case, it patented a pharmaceutical manufacturing process. As this process had not yet been commercialized, Verax frequently sought infusions of capital to support its operations. In early 1986, Verax's management conducted negotiations with a private venture capital group for a substantial capital investment in exchange for the issuance of sufficient shares to give the new investors majority control of Verax. On April 30, 1986, this $5.4 million transaction was finalized and closed. Throughout the relevant time period, defendant Dean served as chairman of the board of Verax, and defendant Christie was president.

The plaintiff joined Verax in 1983, rising through the scientific ranks to become head of the science department and a member of the senior management team. According to the plaintiff, defendants Dean and Christie made a variety of agreements with the plaintiff, in essence committing to negotiate on the plaintiff's behalf with the venture capital group in order to provide a substantial equity package for the plaintiff as part of the anticipated deal. In March 1986, however, the plaintiff learned from defendant Christie that he had not been fully included in the equity participation deal. After the April 30th closing, the plaintiff informed defendant Dean that he had retained counsel to assist him in obtaining a fair equity package. The plaintiff left Verax in May 1986 under disputed circumstances that are not relevant to the issues before us in this appeal.

The plaintiff then initiated this action, originally alleging breach of contract and misrepresentation against defendant Verax, later amending his complaint to include counts of misrepresentation against all three defendants, breach of fiduciary duty against defendants Dean and Christie, and promissory estoppel against defendant Verax. Defendant Verax sought summary judgment on both counts of the original complaint. The Superior Court (*Morrill*, J.) denied the motion in September 1989.

Prior to trial, the plaintiff moved *in limine* to bar the testimony of a potential witness for Verax, Sheridan Snyder, to which the defendants objected. In his final pretrial order, the Trial Judge (*Smith*, J.) granted the motion. The defendants immediately moved for reconsideration. On reconsideration, the trial court ruled that Snyder could testify so long as he appeared for a deposition at least twenty-four hours in advance of his trial testimony. The court agreed to suspend the trial for those twenty-four hours to allow the deposition to be transcribed. The defendants were unable to produce Snyder for a deposition, and Snyder was not permitted to testify.

In November 1991, the jury returned verdicts of $200,000 on the misrepresentation count against Dean, $80,000 on the breach of contract claim against Verax, $84,866 on the promissory estoppel count against Verax, and $84,866 and $84,868 against Christie and Dean respectively on the breach of fiduciary duty count. The defendants moved for a judgment notwithstanding the verdict. The trial court denied this motion and entered judgment for the plaintiff in the amount of $200,000. The defendants then brought this appeal, and the plaintiff cross-appealed.

## I. Summary Judgment

We first consider whether the trial court improperly denied defendant Verax's motion for summary judgment on the plaintiff's contract claim against it. "[T]he trial court must grant summary judgment when it finds no genuine issue of material fact, after considering the affidavits and other evidence presented in a light most favorable to the non-moving party, . . . and when the moving party is entitled to judgment as a matter of law." *Heaton v. Boulders Properties, Inc.*, 132 N.H. 330, 335, 566 A.2d 1127, 1130 (1989) (citations omitted). The party opposing summary judgment must put forth contradictory evidence under oath, "sufficient . . . to indicate that a genuine issue of fact exists so that the party should have an opportunity to prove the fact at trial. All reasonable doubts should be resolved against the movant." *Dolan v. Maple Leaf Health Care Center, Inc.*, 119 N.H. 424, 425, 402 A.2d 196, 197 (1979).

## A. *Apparent Authority*

The defendants first contend that the plaintiff could not prove that Verax manifested an intention to enter into a contract to grant him an equity interest in the company because there was no proof that Dean and Christie had actual or apparent authority to enter into such a contract on Verax's behalf. Because the plaintiff did not allege that Dean or Christie had actual authority to enter into the contract on behalf of Verax, we will limit our inquiry to the trial judge's determination that a genuine issue of fact existed as to apparent authority.

The defendants rely on our decision in *Daniel Webster Council, Inc., Boy Scouts of America v. St. James Association, Inc.*, 129 N.H. 681, 533 A.2d 329 (1987), to prove that Dean and Christie lacked apparent authority. In *Daniel Webster Council*, we held that a corporate officer has apparent authority when "the corporation itself so acted as to indicate to a third party that [the corporation's agent] was vested with the authority to enter into a contract on the [corporation's] behalf." *Id.* at 683, 533 A.2d at 330. We also held that apparent authority exists if the agent's conduct conforms with the general custom of agents "in that line of business." *Id.*

The defendants in the instant case assert that it was corporate practice for Dean and Christie to seek the approval of their board of directors for any actions that they proposed Verax to take, and, therefore, no reasonable person could possibly have believed that the defendants had apparent authority to enter into a binding equity participation agreement on behalf of the corporation. The plaintiff counters that Verax was typical of close corporations in that its corporate officers, Dean and Christie, often made corporate decisions informally, seeking board approval only to "rubber stamp" their actions. We have held that "[a] requirement that there be a formal tender of consideration for stock may be unduly technical.... This is especially true in the context of a close corporation, where the coalescence of ownership and management tends to result in informality of procedures." *Bielinski v. Miller*, 118 N.H. 26, 29, 382 A.2d 357, 359 (1978) (citations omitted). We therefore agree with the trial court that the plaintiff's allegations raised a triable issue of fact. Based solely on these allegations, a reasonable person could indeed infer that Dean and Christie had apparent authority to contract on behalf of Verax. Thus, the denial of summary judgment on this issue was proper.

## B. *Specificity of Contract Terms*

We next address the defendants' contention that summary judgment should have been granted because the terms of the alleged promises made to the plaintiff were not sufficient to support a finding that a contract was formed. An "'offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain.'" *Chasan v. Village District of Eastman*, 128 N.H. 807, 815, 523 A.2d 16, 21 (1986) (quoting RESTATEMENT OF CONTRACTS § 32 (1932)). The defendants assert that the plaintiff's own evidence offered in opposition to the summary judgment motion reveals "only extremely imprecise statements" about the alleged equity participation deal. We find this argument unpersuasive. The plaintiff, in opposing the summary judgment motion, asserted at least four examples of specific promises made to him either by defendant Dean or Christie, or both. These promises related to the number of shares the plaintiff would receive and to the distribution of those shares among the senior managers. The defendants' reliance on our decision in *Sawin v. Carr*, 114 N.H. 462, 323 A.2d 924 (1974), for the proposition that a court will not attempt to "guess" essential terms in a contract, is misguided. In *Sawin*, the defendants claimed that their agreement with the plaintiffs was too indefinite as to time and price to support the specific performance of the contract. *Id.* at 465, 323 A.2d at 926. We held, however, that "[w]hile it is true that contracts, both oral and written, must be definite in order to be enforceable, the standard of definiteness is one of reasonable certainty and not 'pristine preciseness.'" *Id.* Thus, because not all terms need be scrupulously exact for a contract to exist, the trial court correctly found that the plaintiff presented enough factual evidence of an agreement to defeat Verax's summary judgment motion.

## C. *Statute of Frauds*

The defendants also allege that the trial court incorrectly denied Verax's summary judgment motion because the alleged agreements for equity participation violated the statute of frauds. The statute of frauds, RSA 506:2 (1983), requires all agreements not to be performed within one year to be in writing and signed by the party to be charged. The plaintiff responds that Verax waived reliance on the statute of frauds because it did not file a brief statement, *see* SUPER. CT. R. 28, and, in any event, the statute does not apply because the contracts at issue were capable of being fully performed within one year.

■ Our review of the record provided to us does not indicate that the plaintiff articulated to the trial court his objection to Verax's ability to argue the statute of frauds, leaving in doubt whether the plaintiff has properly preserved this issue for our review. *See State v. Constant*, 135 N.H. 254, 257, 605 A.2d 206, 208 (1992). Nevertheless, the plaintiff's second argument is dispositive. In his writ, the plaintiff alleged that, between September 1985 and April 1986, defendants Dean and Christie entered into several agreements with him, under which he would receive a certain number of shares of stock or options, or both. Any one of these alleged agreements could have been fully performed on the April 30, 1986, closing date, which would have avoided a subsequent statute of frauds challenge, as the closing date would have been less than one year from the date of the first alleged agreement. "[T]his section of the statute renders unenforcible [*sic*] only those contracts which cannot be performed according to their terms within a year from the time of their inception." *Davis v. Grimes*, 87 N.H. 133, 135, 175 A. 238, 240 (1934). We hold, therefore, that the trial court's denial of Verax's motion for summary judgment on this count was proper.

## II. Judgment Notwithstanding the Verdict

The defendants' second assertion on appeal is that the trial court improperly denied their motion for judgment notwithstanding the verdict because the plaintiff failed to prove reliance to his detriment on the defendants' alleged fraudulent misrepresentations and because the plaintiff failed to prove with reasonable certainty the existence or amount of damages.

■ In deciding a motion for judgment notwithstanding the verdict, the trial judge must construe the evidence and all reasonable inferences most favorably to the party opposing the motion. *St-Laurent v. Fiermonti Oldsmobile*, 136 N.H. 70, 73, 611 A.2d 638, 639 (1992). The motion must be denied if the evidence is conflicting, or if opposing inferences may be drawn from it. *Id.* The motion can be granted only when "all of the evidence viewed most favorably to the opponent so overwhelmingly favors the moving party that no contrary verdict based upon that evidence could ever stand." *Id.*

■ We hold that the trial court did not err in applying these legal principles. First, the plaintiff presented evidence that, following promises made to him by defendants Dean and Christie, he continued his at-will employment, refrained from resigning, and took on new responsibilities. We have held that continued service by an at-

will employee can constitute consideration for the employer's offer to improve the employee's employment terms, and that an employee's continuation on the job is the very act by which he accepts that offer. *Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 736, 547 A.2d 260, 265 (1988). From the evidence, the jury could draw at least a reasonable inference that the plaintiff's continued employment was an act in reliance on the defendants' representations that he would receive a substantial equity share of the management pool. Thus, the defendants' assertion of a lack of actual reliance is without merit.

██ Second, the plaintiff presented competent evidence of the value of his damages, based on expert testimony that provided high and low estimates of the value of the shares and options the plaintiff had been promised. With simple multiplication, the jury could reasonably infer the amount of the plaintiff's damages. New Hampshire does not require that damages be calculated with mathematical certainty, and the method used to compute damages need not be more than an approximation. *Peter Salvucci & Sons, Inc. v. State*, 110 N.H. 136, 154, 268 A.2d 899, 911 (1970). The defendants' assertion of inadequate proof of damages, therefore, also lacks merit. The trial court's denial of judgment notwithstanding the verdict was proper.

*III. Requiring Witness Deposition Prior to Testimony*

The defendants finally contend that the trial court's refusal to permit the testimony of Sheridan Snyder unless he submitted to pretrial discovery constitutes an impermissible "discovery sanction" and an abuse of its discretion.

██ We have observed that "control over the breadth and scope of pre-trial discovery is left to the sound discretion of the trial judge." *Miller v. Basbas*, 131 N.H. 332, 338, 553 A.2d 299, 303 (1988). In the case at bar, the trial court would have allowed Snyder's testimony had he been made available for a pre-trial deposition. According to the defendants, Snyder's testimony was "crucial." The defendants contend that Snyder would have testified that he, as head of the venture capital group, made the final decisions regarding the composition of the equity package for Verax's management, and that the plaintiff's continued employment at Verax was not essential to the deal. Nevertheless, for two years, from April 1988 to April 1990, the defendants, despite repeated requests from the plaintiff, could not schedule a discovery deposition, admitting that they were uncertain whether Snyder would voluntarily appear for such a deposition

in his home state of Virginia. In light of the plaintiff's lack of pre-trial access to Snyder, the trial court was well within its discretion to require a deposition twenty-four hours in advance of Snyder's trial testimony. We therefore reject the defendants' assertions to the contrary.

*IV. Reduction of Jury Awards*

In the case at bar, the jury returned five separate damage awards, totalling $534,600, broken down as follows: (1) breach of contract against Verax, $80,000; (2) promissory estoppel against Verax, $84,866; (3) misrepresentation against Dean, $200,000; (4) breach of fiduciary duty against Dean, $84,868; and (5) breach of fiduciary duty against Christie, $84,866. The trial court entered judgment for the plaintiff in the amount of $200,000, the largest single verdict in his favor. The plaintiff argues that the trial court erred in eliminating the other four jury awards.

 New Hampshire follows the universally accepted principle that "the purpose of damages is to put the injured party as nearly as possible in the same position he would have been had the injury not occurred." *Elwood v. Bolte,* 119 N.H. 508, 511, 403 A.2d 869, 871 (1979). A plaintiff cannot claim multiple recoveries for the same loss even though different theories of liability are alleged in the complaint. 22 AM. JUR. 2d *Damages* § 35 (1988). The issue we must decide is whether the plaintiff suffered a single loss or multiple losses.

Although the plaintiff admits that all of the damages awarded to him stem from a common core of facts, *i.e.,* the promised equity participation, he nevertheless claims that the jury calculated each award independently, based on the separate promises made by the defendants at various times in early 1986. The plaintiff relies on the theory expounded in *Corriz v. Narranjo,* 667 F.2d 892 (10th Cir. 1981), *cert. granted,* 456 U.S. 971, *cert. dismissed,* 458 U.S. 1123 (1982), for support of his argument that such jury awards may be "stacked." We find the theory in *Corriz* to be inapplicable to the case at bar. *Corriz* held, in part, that the jury's award of multiple damages could not be challenged on appeal because the defendants failed to make their double recovery objection clear to the trial judge before verdict forms were submitted to the jury. *Id.* at 896. As the *Corriz* court noted, "[h]ad defendants made their objection clear, the trial court would have been afforded the opportunity . . . to analyze the supposed error and rectify it if it were found to exist." *Id.* at 896 n.1.

In the case at bar, the plaintiff himself raised the issue of multiple recoveries in a proposed jury instruction. The plaintiff's proposed

instruction number nine contained the following clause: "However, since all of plaintiff's claims arise out of a single core of facts, the Court will only grant a single recovery, even if you find for plaintiff on more than one of his claims or if you find against more than one defendant." The plaintiff also proposed that the jury be required to indicate which of the separate awards were duplicative of each other. The trial judge incorporated proposed instruction number nine into his instructions to the jury but did not require the jury to indicate whether any of the awards on the special verdict form were duplicative of other awards on the form.

We find no error with the trial court's decision not to require the jury to indicate whether its awards were duplicative, nor do we find error with the trial court's entry of judgment for the largest of the jury's awards. Having specifically requested a jury instruction that a single recovery would be granted, admittedly because the claims "arise out of a single core of facts," the plaintiff's insistence that the jury indicate duplicativeness of those awards defies logic. The plaintiff's theory as embodied in his proposed instruction indicates that he suffered only one loss; each award stemming from that loss must therefore be duplicative of every other award. As we have noted, the plaintiff is not entitled to multiple recoveries for the same loss merely because he alleged alternative theories of recovery. *See* 22 AM. JUR. 2d *Damages* § 35. We find no merit in the plaintiff's cross-appeal.

*Affirmed.*

All concurred.